**Margie J. THOMPSON**

v.

**UNITED STATES of America.**

**Civ. A. No. 75–1653.**

United States District Court,
E. D. Pennsylvania.

March 23, 1977.

Russell D. Henkin, David Berger, P. A., Philadelphia, Pa., for plaintiff.

Gregory S. Hrebeniak, Asst. U. S. Atty., U. S. Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OF DECISION

McGLYNN, District Judge.

This tax refund suit must be decided in a somewhat bizarre factual context.

The story begins on September 1, 1972, when the taxpayer[1] was about to embark on a flight from the Philadelphia International Airport to Los Angeles, California. Because she fit the "profile"[2] of a potential hijacker, she was detained by Customs Agents who, with her consent, searched her baggage.[3] It was discovered that one of the smaller pieces of luggage "was completely filled with stacks of money" which, when counted, totalled $40,055.00. Asked the source of the money, the taxpayer explained that she earned the money as a prostitute during the summer months at a New Jersey seashore resort. She stated she earned the money at the rate of $100.00 per date.

While she was detained, the Internal Revenue Service was notified and a computer check disclosed that she had not paid income taxes for the years 1969, 1970 and 1971. Consequently, on September 6, 1972, the $40,055.00 was levied on after a jeopardy assessment was made pursuant to Section 6861, Internal Revenue Code of 1954 for the years 1969, 1970 and 1971.[4] The taxpayer was given a receipt for the payment of taxes in the amount of $40,055.00.

On April 26, 1974, the taxpayer filed Form 1040—Individual Income Tax Returns for the periods ending December 31, 1969, December 31, 1970, December 31, 1971 and December 31, 1972. The taxpayer reported no income for the years 1969, 1970 and 1971, but on her 1972 return she reported income in the amount of $41,000.00 and claimed a refund in the amount of $31,729.67, being the difference between the income and self-employment taxes due on $41,000.00 and the $40,055.00 which had been seized by the Government.

When her claim for refund was not acted upon within six months, she instituted the present suit.

The Court accepted the 1972 return at face value and found that she had income that year of $41,000.00. The Court also found, based on her testimony, that the taxpayer earned $4,075.00 in 1969, $8,100.00 in 1970 and $3,625.00 in 1971.

However, during the course of the discovery proceedings prior to trial, the plaintiff testified that the $40,055.00 seized at the airport did not belong to her but belonged to a person named Joe, whose last name was unknown, and that she was merely transporting it to California. This development was reflected in an amended complaint in which she alleged that she was carrying the money as a bailee. She repeated the substance of her deposition at trial. Thus it is undisputed that the funds seized by the Internal Revenue Service through attachment did not belong to the taxpayer but were in her possession in her capacity as a courier. It also developed at trial that the taxpayer has not seen nor heard from "Joe" since the seizure.

Relying on Section 6402(a) of the Internal Revenue Code, the Government contends that a refund can be claimed only by the person who made the payment, and, argues the Government, since it was "Joe's" money which was used to pay the taxes, the Court has no authority to grant a refund to the plaintiff.

Plaintiff, on the other hand, takes the position that regardless of the source of the

1. I refer to the plaintiff as the taxpayer, but whether or not she is a taxpayer is at the heart of the dispute.

2. Defined in *United States v. Davis,* 9 Cir., 482 F.2d 893, 898 as "objective characteristics to identify potential hijackers."

3. As noted by the Court in *United States v. Davis, supra* at 901: "On August 1, 1972, the F.A.A. issued a directive that no airline 'shall permit any person' meeting the profile to board a plane unless his carry-on baggage had been searched and he had been cleared through a metal detector or had submitted to a 'consent search' prior to boarding." (footnote omitted).

4. The Revenue Agent calculated the income by estimating that she had two dates per day at $100.00 per date, three weeks per month, twelve months per year—less, of course, appropriate expenses for a hotel room.

funds, she was the person who made the payment and therefore she is entitled to the refund.

The standing *vel non* of plaintiff to obtain a refund of the tax overpayment rests upon an interpretation of 26 U.S.C.A. § 6402(a), which states in pertinent part:

"In the case of any overpayment, the Secretary . . . may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the *person who made the overpayment* and shall refund any balance to *such person.*" (emphasis supplied)

Both parties cite *Scanlon v. United States,* 330 F.Supp. 269 (E.D.Mich.1971) in support of their respective interpretations of § 6402(a). The Court in *Scanlon* denied the requested refund, noting that plaintiff's employer had expressly assumed the liability for plaintiff's taxes, and had actually paid such taxes with its own check. Therefore, plaintiff was not the person who made the overpayment within the meaning of § 6402(a). However, the Court went on to state:

"The mere fact that the funds came from Abner Wolfe, Inc. would not, in the Court's opinion, bar Jack Scanlon from claiming the refund if Mr. Scanlon had to borrow them or if in any other manner he had obligated himself for their repayment or if he had in fact, using the funds, himself paid the tax." 330 F.Supp. 269, 270–71.

The Government's reliance upon plaintiff's avowed status as a bailee to establish her lack of standing is misplaced, for implied in her status as a bailee is the obligation to turn the funds over to the bailor. Moreover, § 6402(a) contains no requirement that a refund claimant establish ownership of the amount claimed. All that need be shown is that the person seeking the refund is the person who made the overpayment. Here, the money in question was taken from plaintiff's possession, acknowledged by a receipt given to her, and applied to taxes assessed against her. The fact that some third person may have a superior claim to the money once it is refunded to plaintiff does not alter the fact that she is the "person who made the overpayment" within the meaning of § 6402(a). She therefore has standing to maintain the instant refund action.

The Government cites *Griffin v. United States,* No. 5–72139 (E.D.Mich. 19 July 1976) (unreported memorandum opinion), for the proposition that a refund claimant must show ownership of the sum levied upon. In *Griffin,* money allegedly belonging to plaintiffs was seized in a home owned by them but occupied by their son. In denying the refund, the Court held that plaintiffs had failed to establish any claim whatsoever to the funds—not even a right of possession. Viewed in this light, *Scanlon* supports the plaintiff's position.

Similarly inapposite here is *Mc Cune v. United States,* 75–2 USTC para. 9657 (C.D. Calif. 6 June 1975), wherein it was held that a taxpayer cannot maintain a refund suit for taxes which were neither assessed against him nor paid by him.

It is my conclusion that § 6402(a) does not bar a taxpayer from obtaining a refund even though the overpayment of taxes was made with funds in her possession as a bailee.

Accepting plaintiff's figures, I find that she earned $4,000.00 in 1969, $8,000.00 in 1970, $3,500.00 in 1971, and $41,000.00 in 1972. Accordingly, judgment is entered for defendant and against plaintiff on the counterclaim for taxes, penalties, and interest in the amount of $14,343.44. This amount is to be offset against the sum seized from plaintiff on September 5, 1972, and judgment is entered for plaintiff and against defendant for a refund of tax overpayment and interest in the amount of $34,-828.88. Defendant shall further refund to plaintiff the sum of $712.91, which represents overpayments by plaintiff on her 1973, 1974, and 1975 taxes, plus interest thereon. Judgment is therefore entered for plaintiff in the amount of $35,541.79.