633 F.2d 1168
 81-1 USTC P 9154
 FIRST NATIONAL BANK OF FORT WORTH et al., Plaintiffs-Appellees,
v.
UNITED STATES of America et al., Defendants,
Avelina Magno, Administratrix of the Phillippine Estate of
Linnie Jane Hodges, Deceased, Interpleader
Defendant-Appellant.
 No. 78-3341.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 9, 1981.
 
 Richard G. Williams, Bill E. Bowers, Daniel L. Lowry, Fort Worth, Tex., for interpleader defendant-appellant.
 Brown, Herman, Scott, Dean & Miles, William M. Brown, Fort Worth, Tex., for First Nat'l.
 Appeal from the United States District Court for the Northern District of Texas.
 Before GODBOLD, SIMPSON and THOMAS A. CLARK, Circuit Judges.
 SIMPSON, Circuit Judge:
 
 
 1
 This appeal requires our decision of questions of tax liability and statutory construction which have seldom arisen in the past, never in this Circuit.
 
 
 2
 Both the Philippine (misspelled as Phillippine in the caption of this appeal) and Texas estates of Linnie Jane Hodges, separate juridical entities, by agreement of the parties, paid the same income tax deficiencies for their testatrix; only the Texas estate filed a claim for refund followed by a suit in the district court on this claim. Fearing exposure to double liability, the Internal Revenue Service (IRS) interpleaded the Philippine parties. The court below held that due to an agreement among the parties, the Philippine estate was primarily liable for the deficiency and that under the doctrine of subrogation, $143,086.18 of the $190,429.18 overpayment made by the Philippine estate was attributable to money paid by the Texas estate and should be returned to it. Moreover, the court found the remaining $47,343.00 also should go to the Texas estate because the heirs, who would ultimately receive the distribution, preferred the money be paid to the Texas estate. The IRS was assured that it would not experience double liability.
 
 
 3
 The estates litigating below came into existence on May 23, 1957, by reason of the death in the Philippines of Linnie Jane Hodges, a citizen of the United States. Her will was admitted to probate in the Philippines and in Texas. Mr. Hodges, as her executor, agreed in October, 1962, to a $117,801.67 assessment of United States income tax deficiencies for five calendar years, 1952, 1953, 1955, 1956 and 1960.[1] Two months later, on December 24, 1962, Mr. Hodges died.
 
 
 4
 On January 24, 1964, all the parties represented in this appeal signed a motion for settlement agreeing that the tax liability of $117,801.67 be paid from the Philippine assets. The Court of First Instance of Iloilo, Philippines, entered an order approving the agreement and directing that the tax be paid. Record, Exhibit B. Nevertheless, as a result of collateral litigation, the Philippine court temporarily enjoined payment.
 
 
 5
 The IRS, unable to reach the Philippine assets, sought to collect the taxes from the Texas Estate. The appellees, co-administrators of Mrs. Hodges' Texas estate, paid the tax deficiencies and assessments for the years 1952, 1953, 1955 and 1956 in the amount of $88,514.75, plus interest of $16,744.43, for a total of $105,259.18. The 1960 deficiency assessment of $29,286.92 plus interest, was abated so no payment of this deficiency was ever made by the Texas estate of Mrs. Hodges.
 
 
 6
 In December 1972, the Philippine court lifted its injunction. The Court of First Instance ordered the administratrix on May 22, 1973, "to pay forthwith all claims against the testate estate of Linnie Jane Hodges which have been heretofore allowed, but not paid-particularily (sic) those items indicated in the Amicable Settlement dated January 24, 1964 and approved on the same date by the court...." Record, Exhibit G at 2. The order further provided that the claims for the tax assessments, including 1960 "shall be immediately paid out of the funds under the control and custody of the (Philippine Commercial and Industrial) Bank and charged against the testate estate of the late Linnie Jane Hodges in the accounting of the PCI Bank." Id.
 
 
 7
 On March 8, 1974 the administratrix of Mrs. Hodges' Philippine estate, with the consent of the administrators of her United States estate, obtained a Philippine Commercial and Industrial Bank check for $190,429.18, which is the income tax liability of $117,801.67 agreed to in the motion for settlement plus interest to March 8, 1974 totaling $72,627.51. The Southwest Service Center of the IRS accepted this check on February 29, 1975. The Texas administrators, who had consistently maintained to the IRS that the Texas estate was not primarily liable for the tax it had paid, filed a claim for a refund of $143,086.18. The present litigation followed.
 
 
 8
 Although appellant has raised the Assignment of Claims Act, 31 U.S.C. § 203, it is not germane to the instant litigation because the 1964 motion for settlement does not present a voluntary assignment of a claim to which the act would apply. See generally United States v. Shannon, 342 U.S. 288, 292, 72 S.Ct. 281, 284, 96 L.Ed. 321 (1952); United States v. Aetna Cas. & Sur. Co., 338 U.S. 366, 374, 70 S.Ct. 207, 212, 94 L.Ed. 171 (1949). The 1964 agreement provided for the transfer of liability for the tax from the Texas estate to the Philippine estate; the assignment of a claim, which arose later, was not in the contemplation of the parties to the agreement.
 
 
 9
 The issue pertinent to this appeal is what is the effect, in an interpleader action, of the January 24, 1964 motion for settlement in conjunction with 26 U.S.C. § 6402(a) of the Internal Revenue Code? The January 24, 1964 motion for settlement, signed by all the parties to this litigation and given the force of law by the Philippine court order stated, "The Internal Revenue Service of the United States of America shall be paid the sum of $117,801.67 plus interest to be accuratelycomputed (sic) in payment of income tax deficiency levied by the United States of America against the estate of Linnie Jane Hodges ..." Record, Exhibit A at 7. Other considerations aside, the legal result of this agreement and order is that the Philippine estate is the primary obligor as between the two estates.
 
 
 10
 The agreement, however, does not stand alone. The Internal Revenue Code, 26 U.S.C. § 6402(a) provides that:
 
 
 11
 In the case of any overpayment, the Secretary or his delegate, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall refund any balance to such person.
 
 
 12
 I.R.C. § 6402(a) (emphasis added).
 
 
 13
 Section 6402(a) of the Internal Revenue Code has been interpreted in three recent cases: Scanlon v. United States, 330 F.Supp. 269 (E.D.Mich.1971); Thompson v. United States, 429 F.Supp. 13 (E.D.Pa.1977); and United States v. Gilbert, 478 F.Supp. 306 (S.D.N.Y.1979). Scanlon was a suit for the refund of income tax withholdings, Federal insurance contributions taxes and Federal excise taxes assessed against plaintiff employee, and paid by his employer. In denying the refund to the employee, the court stated, "The language of 6402(a) is specific in limiting the refund of overpayments to the 'person who made the overpayment.' " Scanlon v. United States, supra, 330 F.Supp. at 270. The court further interpreted its holding that the employer and not the employee was entitled to any refund by stating:
 
 
 14
 The mere fact that the funds came from Abner Wolfe, Inc. (the employer) would not in the Court's opinion, bar Jack Scanlon (the employee) from claiming the refund if Mr. Scanlon had to borrow them or if in any other manner he had obligated himself for their payment or if he had in fact, using the funds, himself paid the tax. Exhibit 15, however, expressly recites that Abner Wolfe, Inc. assumes the liability for the tax and all of the evidence in the case indicates that it paid it. Both the agreement and Mr. Scanlon's testimony cause the Court to conclude that Mr. Scanlon did not pay the tax.
 
 
 15
 Id. at 270-71. The court seems to imply that the person who accepted the liability for paying the tax, not whose name was on the check, was the most important factor in determining who ought to receive the refund.
 
 
 16
 Thompson relied on Scanlon and held that a refund was to be paid to a bailee who had accepted the liability for paying the tax. The court stated: "Here, the money in question was taken from plaintiff's (bailee's) possession, acknowledged by a receipt given to her, and applied to taxes assessed against her. The fact that some third person may have a superior claim to the money once it is refunded to plaintiff does not alter the fact that she is the 'person who made the overpayment' within the meaning of § 6402(a)." Thompson v. United States, supra, 429 F.Supp. at 15.
 
 
 17
 Finally, the effect of an agreement on Section 6402(a) was discussed in United States v. Gilbert which held that although the taxpayer was entitled to a refund, a protective order would issue to transfer the assets to a creditor who had entered with the taxpayer (debtor) and the IRS into a prior agreement providing for the payment of debts and tax liens.
 
 
 18
 The Gilbert court, in fairness to the litigants and in the interests of judicial economy, considered all the claims in the case before it and resolved them. See United States v. Gilbert, supra, 478 F.Supp. at 310. In the process of resolving the controversy, the Gilbert court stated "A review of the applicable law reveals that neither party has advanced the proper test: it is neither the taxpayer, nor the actual transferor, per se, who is entitled to the refund; rather, we must look to the assumption of liability to determine proper entitlement." Id. at 318.
 
 
 19
 The instant case is unique in that the Texas estate assumed the tax liability for which both estates initially were responsible; and then, as stated above, the Philippine estate assumed the same liability resulting in an overpayment. Normally, under the Internal Revenue Code, the refund would simply go to the one making the overpayment, in this case the Philippine estate, without regard for who had the greater liability for the tax. The present action, however, is more complicated because it is an interpleader action; and interpleader actions, even involving the IRS, are equitable in nature. See United States v. Major Oil Corp., 583 F.2d 1152, 1157 (10th Cir. 1978). See generally Graham v. United States, 79-1 USTC P 9274 (N.D.Tex.1979). Equity requires that the question of which estate is primarily liable for the tax be determined and the dispute between the Texas and the Philippine estate be resolved in order to prevent multiple litigation.
 
 
 20
 The 1964 motion for settlement made the Philippine estate the primary obligor for the tax deficiency actually paid to the IRS by the Texas estate. Therefore, $143,086.18 of the $190,429.18 should be refunded to the Texas estate. Since the Texas estate did not assume any tax liability for the remaining $47,343.00, it must be returned to the Philippine estate.
 
 
 21
 The judgment appealed from is affirmed in part and reversed in part. This cause is remanded to the district court with directions to enter judgment in accordance herewith.
 
 
 22
 AFFIRMED IN PART; REVERSED IN PART; REMANDED.
 
 
 
 *
 Tax Amount Amount Balance
Year Assessed Paid Due
---- ---------- ---------- -----------
1952 $45,370.13 $35,178.43 $10,191.70
1953 $43,877.62 ---- $43,877.62
1955 $ 4,396.75 ---- $ 4,396.75
1956 $30,048.68 ---- $30,048.68
1960 $29,286.92 ---- $29,286.92
 -----------
 TOTAL $117,801.67
 Record, Vol. 1 at 137.