**ESTATE OF Essiy FINK, Deceased, Martin Bruseloff, Temporary Personal Representative, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**Civ. A. No. 85–4501.**

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 26, 1986.

---

Robert B. Pierce, West Bloomfield, Mich., for plaintiff.

Pamela J. Thompson, Asst. U.S. Atty., Detroit, Mich., Tod Luoma, Justice Dept., Washington, D.C., for defendant.

## MEMORANDUM OPINION

SUHRHEINRICH, District Judge.

This matter is before the Court on plaintiff's motion for summary judgment for refund of an overpayment of income tax in the Internal Revenue Service's (IRS) account in the name of Essiy Fink, deceased. The defendant has countered with a motion to dismiss plaintiff's complaint with prejudice or, in the alternative, for summary judgment.

Plaintiff is suing for a refund of income taxes for the years 1970 through 1974, inclusive, in the amount of $156,523.73, plus statutory interest. Of this amount, $135,556.00 reflects amounts which were reported as due and owing to the United States on the returns which were filed in the decedent's name for the years 1970, 1973 and 1974 and which were determined to be overpayments by the United States Tax Court in the case of *Guardianship of Essiy Fink, George Fink, Fiduciary v. Commissioner of Internal Revenue,* T.C. Memo 1984–505. The balance of $20,967.73 reflects amounts which were reported as due and owing to the United States on the returns which were filed in the decedent's name for the years 1971 and 1972, and for which the decedent filed timely claims for refund. The parties agree to the basic underlying facts as determined by the Tax Court for the years 1970, 1973 and 1974

and further agree that similar facts exist for the years 1971 and 1972.

The relevant facts, as determined by the Tax Court, are as follows. Essiy Fink (hereinafter Essiy) was born in either 1889 or 1890 and retired from Chrysler Corporation, as an assembly line spray painter, in 1959. Martin Bruseloff (hereinafter Martin) is Essiy's son-in-law and Paul Bruseloff (hereinafter Paul) is Martin's brother. In 1968 Paul and Martin formed a business which involved the purchase and sale of ovenware. At some point in 1968 or 1969, Paul purportedly started to run the business as a sole proprietorship, although Martin remained active in the business by maintaining the records of the business and advising Paul on its daily operations. Essiy first became involved with the ovenware business in the latter part of 1969. Because of various legal problems, Essiy agreed to let the ovenware business be operated in his name. Martin told Essiy that he would take care of any taxes from the ovenware business. During the years 1969 through 1976, the ovenware business was operated under the name of E. Fink Company, among others (including Queen Victoria). There was no bank account in the name of E. Fink Company, but there was an account in the name of Queen Victoria. Aside from allowing the ovenware business to be operated under his name, Essiy's association with the business was minimal at best.[1] Essiy did have signatory authority over some bank accounts maintained for use in the ovenware business and he signed checks from time to time when requested to do so, however, Martin also had power of attorney to sign Essiy's name and often did so.

For each of the taxable years in question, Schedules C (Profit (or Loss) from Business or Profession) covering the E. Fink Company were filed as part of Essiy's federal income tax returns. The tax liabilities shown on Essiy's tax returns for the years in issue were all paid with monies received in the operation of the ovenware business. It was customary practice of Paul and Martin to use cash receipts and customer checks to pay operating expenses of the ovenware business, rather than maintaining a bank account into which to deposit such receipts and subsequently draw checks therefrom. Some of these customer checks were payable to E. Fink Company or E. Fink. However, the Tax Court found that such checks were not intended for Essiy personally, but were intended to be paid to the proprietor(s) of the ovenware business.

As to the tax liability shown on the 1970 return, Martin took cash and checks received from customers of the ovenware business, deposited them in a bank account the ovenware business maintained under the name "Queen Victoria", and drew a check on this account for the balance due shown on Essiy's 1970 tax return in the amount of $21,592. Martin filled out the check but had Essiy sign it. As to the 1971, 1972, 1973 and 1974 returns, Martin delivered cash and endorsed customer checks received in the course of the ovenware business over to Phillip Nusholtz, attorney at law,[2] who in turn deposited these amounts in a trust account maintained for his clients and then drew a check on this account in payment of the balance due shown on Essiy's returns for such years. Mr. Nusholtz similarly received such funds from Martin and used his client trust account to write checks for any estimated taxes, payments accompanying applications for extensions to file returns, and payments of any interest or additions to tax for the tax returns filed in the name of Essiy Fink.

---

1. Essiy took no part in the management or operation of the business. He received no salary or any other financial benefit from the business. He had nothing to do with choosing the ovenware manufacturer, placing the orders, arranging for shipping or setting prices. Paul or Martin made all of the decisions.

2. Phillip Nusholtz is a tax attorney who represented Essiy, Paul and Martin. Mr. Nusholtz either prepared or reviewed Essiy's tax returns for all the years at issue.

The IRS asserted deficiencies in Essiy's income tax for the years 1970, 1973 and 1974 based upon various adjustments to the Schedule Cs pertaining to the ovenware business. By separate statutory notices, the IRS also determined deficiencies in Paul Bruseloff's income tax and additions to the tax for fraud for the taxable years 1969 through 1974. The deficiencies asserted against Paul were based, inter alia, upon determination that the income of the ovenware business was taxable to Paul, not to Essiy.[3]

The Tax Court found as ultimate findings of fact, inter alia, that 1) no part of the net income from the ovenware business was taxable to Essiy Fink, 2) Essiy Fink received no compensation or other taxable income from the ovenware business, 3) the taxes, additions, and interest paid in connection with the returns filed in the name of Essiy Fink were paid out of proceeds of the ovenware business and were not paid out of any funds belonging to Essiy Fink, and 4) there were overpayments of tax for the years 1970, 1973 and 1974 in the Internal Revenue Service's account in the name of Essiy Fink.

In determining the amount of the overpayment in Essiy's account, the Tax Court had to decide whether the amounts used to pay the tax shown in Essiy's returns represented gross income to him. The Tax Court concluded that the payment of the tax did not constitute income to Essiy. The Tax Court stated:

> At no time did Essiy have dominion and control over any of the funds used to pay the tax shown on his returns. At best he could be considered a mere agent in receiving such funds.... The record is devoid of any evidence that Essiy ever used any such funds for personal benefit.

Instead, the record is clear that he turned all of those checks over to Martin or Paul.

T.C.Memo 1984–505 at 19–20.

The Tax Court next concluded that it did not have jurisdiction to order a refund of the overpayment to Essiy. The Tax Court based its conclusion on the existence of adverse claims as between Essiy and Paul (and possibly Martin) regarding entitlement to the refund. Citing several cases,[4] the Tax Court concluded that it lacked jurisdiction to decide which party was entitled to the refund. Pursuant to that decision, plaintiff filed the present action claiming it is entitled to the refund on behalf of the decedent, Essiy Fink.

Plaintiff filed a motion for summary judgment alleging that under Internal Revenue Code Section 6512(b)(1), the overpayment is to be refunded to the taxpayer the Government asserted the deficiency against and furthermore that Essiy Fink was the "person who made the overpayment" and is entitled to the refund under Section 6402 of the Internal Revenue Code. The government countered with a motion to dismiss plaintiff's complaint with prejudice or, in the alternative, for summary judgment. The government argues that the decedent, Essiy Fink, was not the "person who made the overpayments" sought to be refunded under Internal Revenue Code, Section 6402 and, therefore, the United States has not waived its sovereign immunity to suit. As a result, the government contends that the plaintiff lacks standing to sue for refund. The government further argues that since the Tax Court already determined that none of the monies used to pay the taxes belonged to the decedent, Essiy Fink, or were under his possession or control, plaintiff is precluded

3. The cases involving Paul were severed and settled with stipulated decisions involving substantial deficiencies and fraud additions for the years 1969–1974. Paul was not a party to the Tax Court action nor is he a party to the present action.

4. *United States, ex rel. Girard Trust Co. v. Helvering,* 301 U.S. 540, 542, 57 S.Ct. 855, 856, 81 L.Ed. 1272 (1937); *Hollie v. Commissioner,* 73 T.C. 1198, 1204 (1980); *Commissioner v. Gooch Milling & Elevator Co.,* 320 U.S. 418, 64 S.Ct. 184, 88 L.Ed. 139 (1943); *Morse v. United States,* 494 F.2d 876, 879 (9th Cir.1974); *Huntington National Bank v. Commissioner,* 13 T.C. 760 (1949); *Snively v. Commissioner,* 20 T.C. 136 (1953); *Robbins Tire & Rubber Co. v. Commissioner,* 53 T.C. 275, 279 (1969).

from relitigating whether Essiy was the person who made the overpayments. The government bases this argument on the doctrine of *res judicata* for the years 1970, 1973 and 1974 and on the doctrine of collateral estoppel for the years 1971 and 1972.

## I.

■ The plaintiff first argues that the plain language of Internal Revenue Code Section 6512(b)(1)[5] mandates that the IRS is under a statutory duty to refund the overpayment determined by the Tax Court to the taxpayer. However, the courts that have construed that section, and its predecessor under the 1939 Code,[6] disagree with the plaintiff. Those courts have determined that the tax court's jurisdiction is confined to determining the amount of deficiency or overpayment and does not extend to ordering or denying a refund. *Girard Trust Co. v. Helvering*, 301 U.S. 540, 542, 57 S.Ct. 855, 856, 81 L.Ed. 1272; *Morse v. United States*, 494 F.2d 876, 879 (9th Cir. 1974); *Continental Equities, Inc. v. C.I.R.*, 551 F.2d 74, at 79 (5th Cir.1977). Therefore, the Tax Court and the IRS were correct in deferring the matter of who is entitled to the refund to the District Court for resolution. *Morse* at 879. Furthermore, Section 6512(b)(1) is intended only to grant jurisdiction to the Tax Court. The section that gives the IRS authority to grant refunds is Section 6402.

## II.

The plaintiff next argues that it is entitled to the refund under Internal Revenue Code Section 6402(a). That Section states in pertinent part:

In the case of any overpayment, the Secretary ... may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the *person who made the overpayment* and shall ... refund any balance to such person.

The main issue in this suit is whether the decedent, Essiy Fink, was the "person who made the overpayment" under Section 6402(a). Plaintiff argues that Essiy Fink is the person who made the overpayment and is entitled to the refund. The government argues that the decedent, Essiy Fink, was not the person who made the overpayments whose refunds are sought. In support of its argument the government looks to the determinations made in the underlying Tax Court decision. The government contends that because the Tax Court determined that none of the monies used to pay the taxes belonged to the decedent, Essiy Fink, or were under his possession or control, the plaintiff is precluded from relitigating the issue by the doctrines of *res judicata* and collateral estoppel.

■ It is clear that the doctrine of *res judicata* has no application where the issues to be litigated in the subsequent suit were beyond the jurisdiction of the Tax Court. *Morse*, 494 F.2d at 879; *Erickson v. United States*, 309 F.2d 760, 765, 159 Ct.Cl. 202 (1962). The issue being litigated in this suit is whether the plaintiff is entitled to the refund. The Tax Court had no jurisdiction to decide that issue and, therefore, *res judicata* does not apply to this case.

■ Likewise, collateral estoppel does not bar plaintiff's claim. "Under the judicially-developed doctrine of collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involv-

---

5. "(I)f the Tax Court finds that there is no deficiency and further finds that the taxpayer has made an overpayment of income tax for the same taxable year ... the Tax Court shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the decision of the Tax Court has become final, be credited or refunded to the taxpayer". Internal Revenue Code § 6512(b)(1).

6. Section 322(d) of the 1939 Internal Revenue Code is almost identical to Section 6512(b)(1) of the 1954 Internal Revenue Code, except the 1939 Code referred to the Board [of Tax Appeals], instead of the Tax Court.

ing a party to the prior litigation." *United States v. Mendoza,* 464 U.S. 154, 158, 104 S.Ct. 568, 571, 78 L.Ed.2d 379 (1984). Determining the person who made the overpayment was not necessary to the Tax Court's judgment that there was an overpayment.

### III.

This Court is now faced with the task of determining whether Essiy Fink, deceased, was the person who made the overpayment within the meaning of Internal Revenue Code Section 6402(a). If so, then the plaintiff, Estate of Essiy Fink, is entitled to the refund of the overpayment in tax.

The recent case of *Bruce v. United States,* 759 F.2d 755 (9th Cir.1985) discussed the meaning of "the person who made the overpayment" under Section 6402(a). The government relies mainly on that case and *Scanlon v. United States,* 330 F.Supp. 269 (E.D.Mich.1971). In *Bruce,* the IRS issued a notice of deficiency to the taxpayer after the IRS had disallowed deductions taken by the taxpayer for certain partnership losses. The taxpayer's tax advisor, Harry Margolis, paid the taxes and interest pursuant to an agreement whereby the taxpayer would have to repay the monies only if he were able to obtain a refund. The taxpayer later commenced a suit for refund of the amounts paid by Margolis. The Ninth Circuit affirmed the district court which had found that the taxpayer was not the person who made the overpayment and, therefore, lacked standing to sue.

In *Scanlon,* plaintiff filed a suit for refund of income tax withholding and social security taxes which had been assessed against him. The taxes had been paid by the plaintiff's employer pursuant to an agreement whereby the employer assumed liability for the tax. Concluding that Section 6402(a) was specific in limiting the refund of overpayments to the "person who made the overpayment", the district court held that the plaintiff lacked standing to sue for a refund, even though he was the person assessed.

The plaintiff counters with *Morse v. United States,* 494 F.2d 876 (9th Cir.1974) (where an unknown person paid income tax assessed against the plaintiff); *Cindy's Inc. v. United States,* 740 F.2d 851 (11th Cir.1984) (where Cindy's, Inc. accidently paid the withholding taxes of a related company because of a mix-up in tax deposit forms); *Thompson v. United States,* 429 F.Supp. 13 (E.D.Pa.1977) (where funds seized to pay the plaintiff's taxes belonged to another person); *Janus v. United States,* 557 F.2d 1268 (9th Cir.1977) (where divorced husband sought refund of taxes made from community property earnings). The plaintiff seems to argue that those cases stand for the proposition that if an overpayment finds its way into a taxpayer's account, refund is to be made to the taxpayer, regardless of the source of payment, unless the payment has been made by someone assuming liability for the tax. However, that argument is too broad. Plaintiff concedes that *Morse* was determined under the 1939 code, which called for refunds to be made to the "taxpayer", whereas the 1954 Code requires refunds to be made to the "person who made the overpayment". Therefore, *Morse* is not controlling over the present case. *Cindy's* is distinguishable from the present action in that *Cindy's* dealt with withheld employment taxes. Federal regulations prescribe that deposits of withholding tax must be accompanied by a correctly prepared Form 501. Cindy's, Inc. had satisfied the regulations for payment of the related company's taxes whose form was used, but not its own taxes and, therefore, the related company, and not Cindy's, Inc., was entitled to the refund. *Thompson* and *Janus* are distinguishable from the present controversy as well. Those cases stand for the proposition that a court will not look to the underlying source of the funds where a determination has been made as to who actually paid the tax. "The fact that some third person may have a superior claim to the money once it is refunded to plaintiff does not alter the fact that she is the 'person who made the overpayment' within the meaning of § 6402(a)." *Thompson,* 429

F.Supp. at 15. In the present action it is not clear that Essiy Fink actually paid the tax.

To support its argument that Essiy paid the tax, plaintiff argues that Essiy was the equitable owner of the funds because they were held in his trust account by his attorney, Nusholtz. However, what plaintiff's argument fails to consider is that Nusholtz was also the attorney for the business, and Paul and Martin Bruseloff, as well. The funds used to pay the taxes could just as easily have been held in trust for them. The Tax Court concluded that Essiy had no interest in the funds. The Tax Court stated: "If we had found that any of the funds belonged to Essiy, we would also have found that such funds were income to him." T.C.Memo 1984–505 at 20. Since that determination by the Tax Court was necessary to the issue of whether the payments were income to Essiy, it is binding on this Court. Regardless of the findings of the Tax Court, this Court is of the opinion that Essiy obtained no ownership interest in the funds used to pay the taxes. The funds were derived from the ovenware business, which plaintiff concedes Essiy had no interest in. Therefore, since Essiy had no interest in the funds, such an argument cannot be maintained to say that he was the person who made the overpayment within the meaning of § 6402(a).

■ The approach of the Ninth Circuit seems to be the appropriate one for determining whether a party is the person who has made the overpayment under § 6402(a). "[T]he facts of each case must be analyzed to determine whether a plaintiff has standing to obtain a refund under § 6402(a)." *Bruce*, 759 F.2d at 759.

■ Under the facts of the case plaintiff is not entitled to the refunds of the overpayment of tax. This Court is of the opinion that Essiy Fink, deceased, was not the person who made the overpayment of the tax within the meaning of § 6402(a). The taxes were paid by funds of the ovenware business to cover tax liabilities incurred from the operation of the business. Essiy's only interest in the business was that

his name was being used in it, he had no control over the business. Furthermore, Essiy had no interest in the funds used to pay the taxes. The person who made the overpayment was the proprietor of the ovenware business. Since Paul or Martin Bruseloff are not before this Court, in their individual capacities, the Court need not decide whether they are entitled to the refunds.

Because Essiy Fink was not the person who made the overpayment of tax, the plaintiff, Estate of Essiy Fink, deceased, lacks standing to obtain a refund under § 6402(a) of the Internal Revenue Code. Therefore, the government's motion to dismiss, with prejudice, will be granted. An appropriate order in accordance with this opinion shall be entered.