133 T.C. No. 12

UNITED STATES TAX COURT

JIMMY ASIEGBU PRINCE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13858-08L.               Filed November 2, 2009.

     To collect P's 1997, 1998, 1999, and 2002 unpaid
income tax liabilities and additions to tax discharged
in P's 2005 bankruptcy filing, R served a notice of
jeopardy levy on the Los Angeles County District
Attorney's Office with respect to funds that the Los
Angeles Police Department had seized from P before the
bankruptcy on suspicion of fraudulent credit card
transactions.

     <u>Held</u>:  P cannot raise third-party claims in a lien
or levy case.

     <u>Held</u>, <u>further</u>, jeopardy levy is proper here where
funds belong to P's prebankruptcy estate and are
subject to a prebankruptcy lien filed by R.


Jimmy Asiegbu Prince, pro se.

<u>Vivian Bodey</u> and <u>Debra Bowe</u>, for respondent.

OPINION

WHERRY, Judge:  This matter is before the Court on respondent's motion for summary judgment.  In a May 7, 2008, Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330, respondent determined that it was appropriate to collect petitioner's unpaid income tax liabilities and additions to tax (unpaid tax liabilities) for 1997, 1998, 1999, and 2002 by serving a notice of jeopardy levy.  Petitioner on June 6, 2008, timely petitioned the Court to review that determination.  On April 17, 2009, respondent filed a motion for summary judgment.  Petitioner filed a response to that motion, and respondent filed a reply to petitioner's response.  A hearing was held on the matter on June 25, 2009, in Los Angeles, California.  Following the hearing, petitioner filed a brief responding to the arguments respondent made in his reply and at the hearing.  As explained below, the Court will grant respondent's motion for summary judgment.

Background

Respondent initially determined in a February 2002 notice of deficiency that petitioner had Federal income tax deficiencies for 1997, 1998, and 1999.  Petitioner timely petitioned the Court to redetermine respondent's determinations.  On March 6, 2003, while petitioner's deficiency case at docket No. 9120-02 was pending, the Los Angeles Police Department (LAPD) seized

$263,899.93 from petitioner on suspicion that he had engaged in fraudulent credit card transactions.  Thereafter, the Court issued an opinion in favor of respondent and a September 30, 2003, order and decision in which we decided that petitioner was liable for Federal income tax deficiencies and additions to tax for 1997, 1998, and 1999.  Prince v. Commissioner, T.C. Memo. 2003-247.  Petitioner filed a notice of appeal, but the appeal was dismissed.  On January 28, 2004, respondent assessed the deficiencies and additions to tax as stated in the Court's September 30, 2003, order and decision.

On April 7, 2005, respondent filed a notice of Federal tax lien with the Los Angeles County Recorder for 1997, 1998, 1999, and 2002.  Subsequently, on June 2, 2005, petitioner filed a petition under chapter 7 of the Bankruptcy Code with the U.S. Bankruptcy Court for the Central District of California. Petitioner did not include the funds that had been seized by the LAPD in the schedules of debtor's assets filed with his bankruptcy petition although at least $212,237.89 of such funds apparently remained in the possession of the LAPD at that time.[1]

---

[1]Petitioner listed a total of $15,106 in assets, including $405 of cash on hand and $176 in a checking account.  The remaining assets consisted of noncash personal property. Petitioner's schedules of creditors' claims listed a total of $587,557.74 in liabilities, all of which were classified as unsecured.  Included among them were petitioner's unpaid Federal tax liabilities for the tax years 1997, 1998, 1999, and 2002 in an aggregate amount of $304,200, the amount of the unpaid balance

(continued...)

Petitioner claimed all of the assets that he did include in the schedules of debtor's assets as exempt from his bankruptcy estate, and the bankruptcy trustee did not object to the exemptions claimed. The bankruptcy court treated petitioner's bankruptcy petition as a no-asset case and discharged petitioner's dischargeable debts on January 27, 2006.

In early December 2007 the Los Angeles Inter-Agency Metropolitan Crime Task Force informed respondent that the money seized from petitioner would soon be returned to him. On December 7, 2007, respondent served a notice of jeopardy levy on the Los Angeles County District Attorney's Office. Also on December 7, 2007, respondent sent petitioner a Notice of Jeopardy Levy and Right of Appeal. Respondent's revenue officer, Farrell Stevens, spoke with petitioner about the jeopardy levy on December 14, 2007, and on December 20, 2007, respondent received from petitioner a Form 12153, Request for a Collection Due Process or Equivalent Hearing.

On the Form 12153 petitioner stated that he did not owe respondent the money that had been collected because (1) the

---

[1](...continued)
due shown on the Apr. 7, 2005, notice of Federal tax lien. This amount was categorized under unsecured priority claims--an apparent error since respondent's Federal tax lien should have accorded it secured party status. The Court requested the parties to notify the bankruptcy court about this case and of the omission from the debtor's schedules of assets of the $212,237.89 in funds seized by the Los Angeles Police Department.

underlying liability was incorrect,[2] (2) his liabilities were discharged in bankruptcy, and (3) some of the levied funds did not belong to him. After a face-to-face meeting and a telephone conference, respondent's Appeals settlement officer, Adlai Climan, issued the aforementioned notice of determination sustaining the jeopardy levy action. An Appeals case memorandum attached to the notice of determination indicated that (1) petitioner was precluded from challenging the underlying liabilities for 1997, 1998, and 1999 because the Court had decided those years, (2) the money seized by the LAPD was pre-bankruptcy-petition property that was still subject to lien and levy action even if petitioner was no longer personally liable after his debts were discharged in bankruptcy, and (3) there was no credible evidence that petitioner did not own the levied money.

## Discussion

A party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists and that he or she is entitled to judgment as a matter of law. Rule

---

[2]While petitioner's petition questioned the correctness of the underlying tax assessments, his filed documents and oral argument addressed only the 1997, 1998, and 1999 assessments, all of which resulted from the Court's opinion in Prince v. Commissioner, T.C. Memo. 2003-247. Petitioner did not raise any specific objection to the unpaid portion of the self-reported 2002 tax liability. In any event, the total 1997, 1998, and 1999 unpaid balance due exceeds the amount of respondent's jeopardy levy.

121(b);[3] <u>Sundstrand Corp. v. Commissioner</u>, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994). Facts are viewed in the light most favorable to the nonmoving party. <u>Dahlstrom v. Commissioner</u>, 85 T.C. 812, 821 (1985). Where a motion for summary judgment has been properly made and supported by the moving party, the nonmoving party may not rest upon mere allegations or denials contained in that party's pleadings but must by affidavits or otherwise set forth specific facts showing that there is a genuine issue for trial. Rule 121(d); <u>Dahlstrom v. Commissioner</u>, <u>supra</u> at 820-821.

In his petition, petitioner challenges the notice of determination on the following grounds: (1) "The assessment was grossly wrong. Audit was done without supporting documents. Required audit documents were confiscated by Los Angeles Police Department at the time of the Audit. New audit is necessary to determine accurate assessment"; (2) "All the monies confiscated by IRS do not belong to the Petitioner"; (3) "IRS drove Petitioner to file Bankruptcy; Assessed funds were discharged by [sic] via Bankruptcy filing in 2005"; (4) "The CDP hearing officer's mind was biased from the set [sic] go; biased mind as a result of Detective Maddox unproven falsified and fabricated Reports that lead to the service of a Search and Seizure Warrant

---

[3]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended. All Rule references are to the Tax Court Rules of Practice and Procedure.

against my assets"; and (5) "The CDP Officer made up his mind not to believe our testimony or accept the evidence provided from us."

In his objection to respondent's motion for summary judgment petitioner raises the same arguments raised in his petition and also argues that a jeopardy levy was not appropriate under the circumstances, that he was not timely informed of the jeopardy levy, and that the settlement officer's bias led him to inappropriately foreclose consideration of collection alternatives. He also raised these arguments at the June 25, 2009, hearing and in his brief filed after the hearing.

If a taxpayer's underlying liability is properly at issue, the Court reviews any determination regarding the underlying liability de novo. Sego v. Commissioner, 114 T.C. 604, 610 (2000). We review any other administrative determination regarding the proposed collection action for abuse of discretion. See Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). A taxpayer's underlying liability is properly at issue in a section 6330 collection case if the taxpayer "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability." Sec. 6330(c)(2)(B). Although petitioner would like us to review

the underlying liabilities for 1997, 1998, and 1999,[4] those liabilities are not properly at issue because petitioner received a statutory notice of deficiency for those years and actually disputed the liabilities before the Court. Prince v. Commissioner, T.C. Memo. 2003-247. Therefore, we limit ourselves to reviewing respondent's collection action for abuse of discretion.[5]

We are not persuaded by petitioner's argument that respondent's jeopardy levy was improper because the levied money did not all belong to him. We have long held that the doctrine of standing is "inherently applicable to our proceedings." Anthony v. Commissioner, 66 T.C. 367, 373 (1976). Under that doctrine "'the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, 454 U.S. 464, 474 (1982) (quoting Warth v. Seldin, 422 U.S. 490, 499 (1975)). Petitioner does not have standing in this proceeding to seek the return of money or property that does not belong to him, and he cannot rest his case on the rights of those

_____

[4]Petitioner has not disputed his self-reported underlying tax liability with respect to 2002. See supra note 2.

[5]This review extends to respondent's interpretation and application of bankruptcy law. See discussion infra.

to whom the money or property does belong even if those third parties purport to authorize petitioner to do so.[6]

To the extent respondent incorrectly levied against third parties, those third parties may have the right to bring a wrongful levy action against the United States under section 7426 in a U.S. District Court within the specified limitations period, generally "9 months from the date of the levy or agreement giving rise to such action."  See sec. 6532(c)(1).[7]

In his brief filed after the June 25, 2009, hearing, petitioner claims that he is the authorized representative to pursue such an action on behalf of at least two of these third parties.  In a lien or levy case, as a court of limited jurisdiction, we have no jurisdiction over petitioner's claims asserted on behalf of third parties.  See, e.g., EC Term of Years

---

[6]A taxpayer who ends up overpaying on an unpaid tax liability because of a levy upon third-party funds in the taxpayer's possession as, for example, a custodian or bailee of such funds, may have standing to recover the funds to the extent of the overpayment in a refund action in the appropriate U.S. District Court.  See Thompson v. United States, 429 F. Supp. 13 (E.D. Pa. 1977).  We note that petitioner cannot bring such an action here because petitioner's unpaid tax liabilities with respect to 1997, 1998, and 1999 resulted from the Court's opinion in Prince v. Commissioner, T.C. Memo. 2003-247, that is res judicata and the unpaid tax liabilities exceed the amount of the levied funds.  See supra note 2.

[7]Such a course would also appear to be available to the trustee in petitioner's bankruptcy case were he to conclude that petitioner's omission from the debtor's schedules of assets of the funds seized by the LAPD warrants a reopening of the bankruptcy proceedings.

Trust v. United States, 550 U.S. 429, 435 (2007) (where third party's property is wrongfully levied upon to pay taxpayer's unpaid tax liability, an action under section 7426 in the appropriate U.S. District Court within the allowable limitations period is the proper remedy). See also United States v. Williams, 514 U.S. 527 (1995) (third party whose property was the subject of a wrongful lien and who was forced to pay tax, under protest, on behalf of taxpayer to remove such lien has standing to bring a refund action under 28 U.S.C. section 1346(a)(1) in the appropriate U.S. District Court).

We are similarly unpersuaded by petitioner's argument that his bankruptcy discharge precluded respondent from collection action. Because respondent's collection action is based, in part, upon respondent's interpretation and application of bankruptcy law, we review this interpretation and application for errors. "If respondent's determination was based on erroneous views of the [bankruptcy] law * * *, then we must * * * find that there was an abuse of discretion." Swanson v. Commissioner, 121 T.C. 111, 119 (2003). Unlike in Swanson, respondent has conceded that petitioner's bankruptcy discharge relieved petitioner from personal liability for his unpaid tax liabilities. Respondent argues, however, that a valid tax lien survives bankruptcy and "even though [p]etitioner [is] no longer personally liable for the tax liabilities for tax years 1997, 1998 and 1999 * * *, the

lien continues to attach to [p]etitioner's pre-bankruptcy property." This interpretation and application of bankruptcy law by respondent is consistent with our own prior holdings.

In Bussell v. Commissioner, 130 T.C. 222, 235 (2008), we held that "A discharge under 11 U.S.C. section 727 relieves the debtor of personal (or in personam) liability. * * * Such a discharge, however, does not protect the debtor's assets if those assets were subject to a Federal tax lien that was properly filed pursuant to section 6323 before the bankruptcy petition was filed." See also Iannone v. Commissioner, 122 T.C. 287, 292-293 (2004) (Federal tax liens are not extinguished by personal discharge in bankruptcy, remain in effect, and attach to assets owned before the date of filing the bankruptcy petition). The funds seized by the LAPD were subject to a Federal tax lien that was properly filed before petitioner filed his bankruptcy petition, and petitioner did not include these funds in the schedules of debtor's assets attached to his bankruptcy petition. Accordingly, petitioner's discharge in bankruptcy did not protect the seized funds from respondent's jeopardy levy.

Petitioner's argument that Settlement Officer Climan was biased is also unconvincing. Petitioner's claim rests "upon the mere allegations * * * and [he has not] set forth specific facts showing" that Settlement Officer Climan was biased or how any bias on the part of the settlement officer would have affected

the ultimate determination with respect to the jeopardy levy. See Rule 121(d).

We also find unpersuasive petitioner's argument that the jeopardy levy was not appropriate. We note initially that petitioner did not raise this issue before the Appeals Office and that we generally do not have authority to consider issues raised before the Court for the first time in this lien or levy action. See Giamelli v. Commissioner, 129 T.C. 107, 115 (2007). In any event, even if petitioner had raised the issue before the Appeals Office, we would still be unpersuaded.

Under section 6331(a) a jeopardy levy is appropriate when "the Secretary makes a finding that the collection of * * * tax is in jeopardy". Section 1.6851-1(a)(1), Income Tax Regs., provides that collection is in jeopardy when at least one of the following conditions exists: (1) "The taxpayer is or appears to be designing quickly to depart from the United States or to conceal himself or herself"; (2) "The taxpayer is or appears to be designing quickly to place his, or her, or its property beyond the reach of the Government either by removing it from the United States, by concealing it, by dissipating it, or by transferring it to other persons"; or (3) "The taxpayer's financial solvency is or appears to be imperiled." On the basis of the record before us, we do not find respondent's determination that a jeopardy levy was appropriate to be an abuse of discretion. In

particular, we note that because of the bankruptcy court's discharge of petitioner's tax liabilities, respondent's collection efforts can proceed only against petitioner's pre-bankruptcy-estate assets that are subject to a valid lien, such as the levied funds. If respondent is prevented from levying upon such funds and the funds are then dissipated, respondent may be unable to collect all of the unpaid tax liabilities.

Finally, we are unconvinced by petitioner's argument that he did not receive timely notice of the jeopardy levy. We note again that because petitioner did not raise this issue before the Appeals Office, we may not consider it now. See Giamelli v. Commissioner, supra at 115. Regardless, petitioner's argument is not convincing. Under section 7429(a)(1)(B) the Secretary has 5 days from the date of the jeopardy levy to give a taxpayer written notice of the information upon which he relied in determining that collection was in jeopardy. Respondent sent a notice of the jeopardy levy and of petitioner's right to administrative and judicial review of the levy on December 7, 2007, the day respondent had served the jeopardy levy. Petitioner had received this notice by December 14, 2007, the day petitioner placed an unsolicited call and engaged in a telephone discussion with Revenue Officer Stevens regarding an administrative review of the jeopardy levy. Petitioner subsequently took full advantage of such a review. Therefore,

even though there is no evidence to support petitioner's claim of having failed to receive a timely section 7429(a)(1)(B) notice of the jeopardy levy, we hold that any such error would have been harmless under these circumstances.  See <u>Golub v. Commissioner</u>, T.C. Memo. 2008-122.

Respondent's motion for summary judgment has been properly made and is well supported, and petitioner has not set forth specific facts showing that there exists any genuine issue as to any material fact.  Summary judgment is therefore appropriate. See Rule 121(b); <u>Sundstrand Corp. v. Commissioner</u>, 98 T.C. at 520.

The Court has considered all of petitioners' contentions, arguments, requests, and statements.  To the extent not discussed herein, the Court concludes that they are meritless, moot, or irrelevant.

To reflect the foregoing,

<u>An appropriate order and decision will be entered</u>.