130 T.C. No. 13

UNITED STATES TAX COURT

LETANTIA BUSSELL AND ESTATE OF JOHN BUSSELL, DECEASED,
LETANTIA BUSSELL, SURVIVING SPOUSE, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5766-04L.                    Filed May 29, 2008.

        R assessed income tax deficiencies, additions to
tax, penalties, and interest against PW and her husband
(H) for 1983, 1984, 1986, and 1987 (Ps' unpaid tax
liabilities).  In 1994 R filed notices of Federal tax
lien in California and Utah with regard to Ps' unpaid
tax liabilities.  In early 1995 PW and H filed a
bankruptcy petition under ch. 7 of the Bankruptcy Code.
The bankruptcy court issued a discharge order in the
bankruptcy case later that year.

        In 2000 PW and H were indicted and charged with
various violations associated with bankruptcy fraud.
In February 2002 H died, and no verdict was returned as
to him.  PW was convicted of, among other crimes,
attempted evasion of payment of Ps' unpaid tax
liabilities in violation of sec. 7201, I.R.C.

        In April 2002 R determined that (1) Ps' unpaid tax
liabilities were excepted from discharge in bankruptcy

because PW was convicted of attempted evasion of payment of Ps' unpaid tax liabilities, and (2) collection of Ps' unpaid tax liabilities would be jeopardized by delay. R served jeopardy levies and collected amounts that were applied to Ps' unpaid tax liabilities. R subsequently issued to Ps a notice of the jeopardy levies pursuant to secs. 6330 and 7429, I.R.C. Ps requested and received an Appeals Office hearing under sec. 6330, I.R.C. In March 2004 R sent Ps a notice of determination upholding the decision to proceed with the jeopardy levies. Ps timely petitioned this Court to review R's determination.

Held: R did not abuse his discretion in determining that (1) Ps' unpaid tax liabilities were excepted from discharge in bankruptcy by reason of PW's conviction for attempted evasion of payment of Ps' unpaid tax liabilities and that (2) it was appropriate to proceed with collection by serving the jeopardy levies in dispute.

Held, further, although Ps received a discharge and were relieved of personal (in personam) liability for the penalties and related interest that R assessed for the years in issue, the liens that R filed before Ps filed for bankruptcy attached to certain of Ps' assets, survived the bankruptcy proceeding, and enabled R to collect the penalties and interest by an action against Ps in rem.

Held, further, R complied with sec. 6331(a), I.R.C., by providing Ps with notice and demand for payment of their unpaid tax liabilities for the years in issue before proceeding with collection by serving the jeopardy levies in dispute.

Letantia Bussell, pro se.

Ronald S. Chun, for respondent.

MARVEL, <u>Judge</u>:  Petitioners[1] invoked the Court's jurisdiction pursuant to section 6330(d)[2] to review respondent's determination that it was appropriate to collect petitioners' unpaid tax liabilities for 1983, 1984, 1986, and 1987 (sometimes referred to as the years in issue) by serving jeopardy levies. As explained in detail below, we shall sustain respondent's determination.

FINDINGS OF FACT

Some of the facts have been stipulated.  We incorporate the stipulated facts into our findings by this reference.  Petitioner Letantia Bussell (petitioner) resided in California when the petition was filed.

Petitioner was married to John Bussell (Mr. Bussell) (collectively the Bussells) from 1972 until his death in 2002.

Petitioner is a licensed physician with a specialty in dermatology.  Since 1979 she has maintained a dermatology practice in Beverly Hills, California.  From 1981 through

---

[1]References to petitioners are to Letantia Bussell and the Estate of John Bussell.

[2]Unless indicated otherwise, all section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  References to sections and chapters of the Bankruptcy Code are to tit. 11 of the United States Code after the effective date of amendments made thereto by the Bankruptcy Reform Act of 1994, Pub. L. 103-394, 108 Stat. 4106, that were effective for bankruptcies filed on and after Oct. 22, 1994.  <u>Id.</u> sec. 702, 108 Stat. 4150.

approximately 1995 petitioner conducted her medical practice through various corporations including Letantia Bussell MD Inc. Mr. Bussell was a licensed physician specializing in anesthesiology until he became disabled in September 1992.

## I.  Assessments for 1983, 1984, 1986, and 1987

The Bussells filed joint Forms 1040, U.S. Individual Income Tax Return, for 1983, 1984, 1986, and 1987.  Respondent subsequently examined those tax returns and, pursuant to deficiency procedures and other means, entered substantial assessments of Federal income tax, additions to tax, penalties, and interest for each year.  The validity of these assessments is not in issue.[3]

---

[3]Although the validity of the assessments is not in issue, the Court has discovered an anomaly with regard to certain assessments for 1986 and 1987.  In particular, the Bussells filed a petition with the Court at docket No. 6156-92 contesting a notice of deficiency for 1986 and 1987.  On June 25, 1993, the Court entered an agreed decision at docket No. 6156-92 in which the parties agreed in pertinent part that the Bussells were liable for income tax deficiencies of $186,679 and $97,071.15 for 1986 and 1987, respectively.  The agreed decision included a stipulation below the signature of the Judge who entered the decision that respondent claimed increased deficiencies of $12,973 and $12,360.15 for 1986 and 1987, respectively.  An examination of the notice of deficiency for 1986 and 1987 suggests that these increased deficiencies were reflected in the $186,679 and $97,071.15 deficiency amounts listed in the Court's decision.  However, in September 1993 respondent entered assessments for additional tax for 1986 and 1987 of $199,652 and $109,431.30, respectively.  Assuming the increased deficiencies were already reflected in the deficiency amounts listed in the Court's decision, the $199,652 amount assessed for 1986 is inflated by $12,973, and the $109,431.30 amount assessed for 1987 is inflated by $12,360.15.

II.  Notices of Balance Due and Notices of Intent To Levy

Between November 1992 and October 1993 respondent sent the Bussells multiple notices of balance due for each of the years in issue to correspond with the assessments mentioned above.

Between May and November 1993 respondent sent the Bussells a separate notice of intent to levy for each of the years in issue.

III.  Balances Due for the Years in Issue

Petitioners failed to pay their taxes for the years in issue.  Respondent's records, as of May 29, 2002, reflected that petitioners' unpaid balances for 1983, 1984, 1986, and 1987 totaled $44,556.55, $61,422.27, $600,789.65, and $309,085.73, respectively.  These amounts do not include substantial amounts of accrued but unassessed interest for the years in issue inasmuch as respondent's Forms 4340, Certificate of Assessments, Payments, and Other Specified Matters, indicate that respondent last assessed interest for the taxable years 1983, 1984, 1986, and 1987 between June and September 1993.

IV.  Notices of Federal Tax Lien for 1983, 1984, 1986, and 1987

On March 10, 1994, respondent filed a notice of Federal tax lien with the Los Angeles County Recorder's Office with respect to petitioners' unpaid tax liabilities for the years in issue. On September 6, 1994, respondent filed a notice of Federal tax

lien in Coalville, Utah, with respect to petitioners' unpaid tax liabilities for the years in issue.

V.   The Bussells' Bankruptcy Proceeding

On March 7, 1995, the Bussells filed a petition under chapter 7 of the Bankruptcy Code with the U.S. Bankruptcy Court for the Central District of California.  The Bussells also filed with the bankruptcy court a list of assets which included a condominium unit in Utah and separate term life insurance policies issued by Connecticut Mutual Life Insurance Co. (Connecticut Mutual)[4] and John Hancock Mutual Life Insurance Co. (John Hancock).  The Connecticut Mutual and John Hancock life insurance policies were issued to Mr. Bussell as the insured in September 1987 and April 1990, respectively, and petitioner was named as the beneficiary under the Connecticut Mutual policy.[5] Neither life insurance policy had a cash surrender value on the date the Bussells' bankruptcy petition was filed.  However, under the terms of each policy, Mr. Bussell had a right to renew the policy without evidence of insurability.

The Bussells also disclosed in their list of assets that (1) Mr. Bussell was receiving monthly disability payments

---

[4] Connecticut Mutual Life Insurance Co. is now known as Massachusetts Mutual Life Insurance Co., but we shall refer to the company as Connecticut Mutual.

[5] We assume, as petitioner asserts, that she was also the beneficiary under the John Hancock policy, but the record does not clearly establish this.

totaling $45,650 on four different disability insurance policies, and (2) Mr. Bussell had a pending lawsuit for a claim for unpaid disability benefits against a fifth insurance company.

The Bussells failed to include various assets in the list of assets they submitted to the bankruptcy court. One such asset was a pension plan account that petitioner maintained at Washington Mutual Bank under the name L.B. Bussell Medical Corp. As of December 31, 1994, shortly before the Bussells filed their bankruptcy petition, there was a balance of $284,040 in the pension plan account.

On April 14, 1995, the bankruptcy trustee filed a so-called no asset report with the bankruptcy court. On August 22, 1995, the bankruptcy court entered an order of discharge in the Bussells' bankruptcy case which stated in pertinent part: "The above-named debtor is released from all dischargeable debts".

VI. Criminal Proceedings

On July 5, 2000, the Federal grand jury for the Central District of California returned a 17-count indictment against the Bussells and one of their attorneys. United States v. Bussell, case No. SA CR 01-56(A)-AHS. On January 31, 2002, a superseding indictment was filed against the Bussells and their attorney.

On February 6, 2002, at the close of the criminal trial, Mr. Bussell died. Although no verdict was returned as to Mr. Bussell, petitioner was convicted of one count of violating 18

U.S.C. section 371 (conspiracy to commit an offense against or defraud the United States), two counts of violating 18 U.S.C. section 152(1) (concealment of assets in bankruptcy), two counts of violating 18 U.S.C. section 152(3) (false declaration and statement in bankruptcy), and one count of violating section 7201 (attempted evasion of payment of tax). With regard to this last count, the superseding indictment stated that beginning in June 1992 and continuing until at least August 1995 the Bussells willfully attempted to evade and defeat the payment of a total of $353,394 of the income tax they owed for 1983, 1984, 1986, and 1987 by fraudulently causing the bankruptcy court to discharge their tax debts.

Petitioner was sentenced to a term of incarceration and was initially ordered to pay restitution to various creditors, exclusive of special assessments and interest, totaling $2,393,527. Pursuant to this order, petitioner was directed to pay $1,067,621.90 to the Internal Revenue Service (IRS). Petitioner was further ordered to pay the costs of prosecution totaling $62,214.37, pursuant to section 7201.

Petitioner appealed to the Court of Appeals for the Ninth Circuit, which issued an opinion affirming petitioner's convictions and remanding the case for further proceedings. See United States v. Bussell, 414 F.3d 1048 (9th Cir. 2005). Following the remand, the Court of Appeals issued a second

opinion affirming both petitioner's sentence and an order directing petitioner to pay restitution of $2,284,172.87 and prosecution costs of $55,626.09. See United States v. Bussell, 504 F.3d 956, 963-968 (9th Cir. 2007).

## VII. Jeopardy Levies

On or about April 30, 2002, respondent's area director for Los Angeles, California, made a determination that collection of petitioners' unpaid income tax liabilities for 1983, 1984, 1986, and 1987 would be jeopardized by delay. On or about April 30, 2002, respondent's area director also entered a jeopardy assessment under section 6861(a) of approximately $1.25 million in respect of petitioners' tax liability for 1996.[6]

---

[6]After entering the jeopardy assessment for 1996, respondent issued a notice of deficiency to petitioners for 1996. Sec. 6861(b). Petitioner filed a petition with the Court at docket No. 15462-02 for redetermination of the deficiency.

Respondent also issued a notice of Federal tax lien dated May 3, 2003, with regard to petitioners' unpaid tax liability for 1996. Petitioners requested and received an administrative hearing with regard to the lien pursuant to sec. 6320. On Mar. 3, 2004, respondent issued to petitioners a notice of determination sustaining the filing of the lien for 1996 but noting that the lien had been released because petitioners had fully paid their tax liability for 1996. Petitioners did not file a petition with the Court challenging the notice of determination for 1996.

In Bussell v. Commissioner, T.C. Memo. 2005-77, affd. without published opinion 101 AFTR 2d 2008-313, 2008-1 USTC par. 50,107 (9th Cir. 2007), the Court sustained respondent's determination that petitioner was liable for a substantial deficiency for 1996, as well as a fraud penalty under sec. 6663(a). The Court also denied petitioner's claim for relief under sec. 6015.

Revenue Officer Farrell Stevens (Revenue Officer Stevens) was assigned to collect petitioners' unpaid tax liabilities for 1983, 1984, 1986, 1987, and 1996. On April 30, 2002, Revenue Officer Stevens hand delivered three notices of levy to Washington Mutual Bank. Two of the levy notices pertained to collection of $2,128,931.70 identified as petitioners' unpaid tax liabilities for 1983, 1984, 1986, and 1987. The third levy notice was delivered with respect to collection of petitioners' unpaid tax liability for 1996. In response to the levies, Washington Mutual Bank delivered to respondent a single check for $713,496.28. Of that amount, approximately $150,000 came from three of petitioners' checking accounts, and $563,000 came from a pension plan account petitioners maintained at the bank.

Respondent subsequently served levies for 1983, 1984, 1986, 1987, and 1996 on Connecticut Mutual and John Hancock in respect of the benefits payable to petitioner on term life insurance policies issued to Mr. Bussell. Connecticut Mutual and John Hancock responded to the levies by transferring to respondent $1,043,525.66 and $1 million respectively.

VIII. Administrative and Judicial Proceedings Related to the Jeopardy Levies

On May 2, 2002, 3 days after delivering the above-described levy notices to Washington Mutual Bank, Revenue Officer Stevens mailed to petitioners by certified mail a Notice of Jeopardy Levy and Right of Appeal for 1983, 1984, 1986, and 1987. The

notice stated that petitioners were entitled to (1) request an administrative review of the jeopardy levy determination pursuant to section 7429 and (2) request an Appeals Office hearing regarding the jeopardy levy determination pursuant to section 6330.

    A.   <u>Petitioners' Request for an Appeals Office Hearing<br>Under Section 6330</u>

On May 13, 2002, petitioners filed with respondent pursuant to section 6330 a handwritten Form 12153, Request for a Collection Due Process Hearing, listing the years in dispute as 1983, 1984, 1986, 1987, and 1996.  On or about May 30, 2002, petitioners' representative filed with respondent a second (typed) request for an administrative hearing.  In both requests petitioners asserted that (1) their underlying tax liabilities were not subject to collection because they were discharged in bankruptcy and (2) petitioner was eligible for relief under section 6015.

    B.   <u>Petitioners' Civil Complaint Filed Pursuant to Section<br>7429</u>

On August 23, 2002, petitioners filed a complaint in the U.S. District Court for the Central District of California, <u>Bussell v. Commissioner</u>, case No. CV-02-6629 SVW, seeking review pursuant to section 7429(b) of the jeopardy levies (described above) and the jeopardy assessment for 1996.  Shortly after the complaint was filed, the parties filed cross-motions for summary

judgment.  Petitioners argued that they were unable to hide or dissipate assets because of court supervision, that the Government was able to acquire petitioners' assets by other means, that other assets were available to satisfy the tax liabilities, and that all tax penalties were discharged in bankruptcy.

On or about December 11, 2002, the District Court entered an order granting the Commissioner's motion for summary judgment and denying petitioners' motion for summary judgment.  The District Court held that the Commissioner had satisfied his burden of proof, i.e., that his jeopardy determination was reasonable, inasmuch as petitioner's criminal history demonstrated that petitioner failed to report income and engaged in a scheme to hide assets from the Commissioner in an attempt to defeat collection of unpaid taxes.  The District Court also held that petitioners failed to satisfy their burden of showing that the jeopardy assessment for 1996 pursuant to section 6861(a) was not appropriate under the circumstances.[7]

---

[7]The District Court declined to address petitioners' assertion that penalties assessed for 1983, 1984, 1986, and 1987 were discharged in bankruptcy.  The District Court noted that the penalties had been assessed years earlier and were not the subject of the disputed jeopardy assessment for 1996.  See Bussell v. Commissioner, case No. CV-02-6629 SVW (C.D. Cal. 2002).  The District Court suggested that the question whether the penalties were discharged in bankruptcy could be raised in the Tax Court or in a refund action.

C.  Petitioner's Payment

On or about May 19, 2003, petitioner remitted to respondent a cashier's check in the amount of $680,000.  Petitioner included the following notation on the back of the check:  "This check is being tendered for full payment of claimed alleged taxes, interest, and penalties by the IRS against Letantia Bussell.  It is tendered with full reservation of rights and under protest."  By letter to petitioner dated May 19, 2003, Revenue Officer Stevens acknowledged receipt of the check and indicated that petitioners' tax liability for 1996 was paid in full and that the IRS would release any outstanding liens and levies for 1983, 1984, 1986, 1987, and 1996.  However, by letter dated September 10, 2003, Revenue Officer Stevens informed petitioners' counsel that, taking into account additional interest assessments, petitioner still owed $541,372.24 for 1983, 1984, and 1986 and that amount might be abated for lack of additional prepetition assets to provide a source for collection, but that the matter ultimately would be decided by respondent's counsel.

D.  Petitioner's Refund Claim

In 2003 petitioner submitted to respondent a Form 843, Claim for Refund and Request for Abatement, for 1986 and 1987.  Petitioner alleged in her petition that she did not receive a response to her claim.

E.  Appeals Office Proceedings and Notice of Determination

On December 1, 2003, Appeals Officer Charlotte Edginton met with petitioner to conduct an administrative hearing pursuant to section 6330.  On March 3, 2004, respondent issued to petitioners a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination) with respect to the collection of their tax liabilities for 1983, 1984, 1986, and 1987.  The notice of determination includes the following determinations:[8]  (1) All legal and procedural requirements were met; (2) petitioners were sent multiple notices and demand for payment of the tax liabilities in question; (3) petitioners had ample opportunity to resolve their tax matters with the Commissioner; (4) petitioners failed to submit financial statements as required for consideration of alternative payment methods; (5) petitioners were precluded from challenging their 1983, 1984, 1986, and 1987 tax liabilities because respondent issued notices of deficiency for those years; (6) petitioners' tax liabilities for the years in issue were not discharged in bankruptcy because petitioner was convicted of attempted evasion of payment of those taxes under section 7201, among other crimes; (7) Federal tax liens attached to the Bussells' assets and

---

[8]The notice of determination admitted as Exhibit 22-J is not a complete copy of the notice of determination issued for 1983, 1984, 1986, 1987.  A copy of the notice of determination, however, was attached to petitioner's petition, and we rely on it for these findings.

survived any bankruptcy discharge; (8) petitioner was precluded from asserting a claim for relief under section 6015 because her application for section 6015 relief was unprocessable; and (9) petitioners failed to submit any evidence to establish that the jeopardy levies did not balance the need for efficient collection of taxes with the legitimate concern that any collection action be no more intrusive than necessary. The notice of determination also stated that the Appeals Office declined to consider the taxable year 1996 because petitioners were engaged in a separate collection review proceeding regarding a lien that respondent had filed for 1996.

Petitioners filed with the Court a timely petition and an amendment to petition, challenging respondent's notice of determination. Petitioners contend that (1) their tax liabilities for 1983, 1984, 1986, and 1987, and interest thereon, were discharged in bankruptcy, (2) all penalties assessed for the years in issue, and interest thereon, were discharged in bankruptcy, (3) the liens that respondent filed before petitioners filed for bankruptcy did not attach to any of the assets that respondent levied on during 2002, (4) respondent failed to provide petitioners with notice and demand for payment in advance of the jeopardy levies, and (5) respondent waived the right to challenge issues (1) and (3) above.

OPINION

Our review of respondent's determination to proceed with collection requires an understanding of the interplay between laws governing collection of Federal income taxes and laws extending protections to debtors who file for bankruptcy. Consequently, we shall preface our analysis with a brief overview of (1) the Secretary's authority to collect Federal income taxes, (2) the protections extended to taxpayers in collection matters pursuant to sections 6320 and 6330, and (3) protections afforded taxpayers under the Federal bankruptcy laws.

I.  The Secretary's Authority To Assess and Collect Income Taxes

The Secretary is required to make inquiries, determinations, and assessments of all taxes imposed under the Internal Revenue Code.  Sec. 6201(a).  An assessment is made when the liability of the taxpayer is recorded in the Office of the Secretary.  Sec. 6203.

Section 6301 authorizes the Secretary to collect taxes imposed by the internal revenue laws.  As a general rule, the Secretary is obliged, within 60 days after making an assessment of tax under section 6203, to give notice to each person liable for such tax stating the amount due and demanding payment thereof.  Sec. 6303(a).  Such notice may be left at the person's dwelling or usual place of business or shall be sent by mail to the person's last known address.  Sec. 6303(a).

- 17 -

A.  Liens

Section 6321 provides that if any person liable to pay any tax neglects or refuses to pay the same after demand, the tax and any interest, additional amount, addition to tax, or assessable penalty shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.  The lien imposed under section 6321 generally arises at the time the assessment is made and continues until the tax liability is satisfied or becomes unenforceable by reason of lapse of time.  Sec. 6322.  However, the lien imposed under section 6321 is not valid against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until the Secretary files notice of the lien with the proper State or Federal authorities.  Sec. 6323(a), (f).

B.  Levies

Section 6331(a) provides that, if any person liable to pay any tax neglects or refuses to pay the tax within 10 days after notice and demand, the Secretary is authorized to collect such tax by levy upon all property and rights to property belonging to such person or on which there is a lien for the payment of such tax.  The final sentence of section 6331(a) provides:

> If the Secretary makes a finding that the collection of such tax is in jeopardy, notice and demand for immediate payment of such tax may be made by the Secretary and, upon failure or refusal to pay such tax, collection thereof by levy shall be lawful without regard to the 10-day period provided in this section.

In connection with the foregoing, section 6331(d)(1) and (2) sets forth the general rule that the Secretary must provide a taxpayer with 30 days' advance notice before proceeding with collection by levy.  Nevertheless, section 6331(d)(3) provides that paragraph (1) shall not apply to a levy if the Secretary determines that collection of the tax is in jeopardy under the final sentence of section 6331(a).

II.  Collection Review Proceedings Under Sections 6320 and 6330

Section 6330(a) provides the general rule that no levy may be made on any property or right to property of any taxpayer unless the Secretary has provided 30 days' advance notice to the taxpayer of the right to an administrative hearing before the levy is carried out.  Section 6330(f) provides, however, that if the Secretary finds that the collection of the tax is in jeopardy, the taxpayer shall be given the opportunity for a section 6330 hearing within a reasonable time after the levy.

If the taxpayer makes a timely request for an administrative hearing, the hearing shall be conducted by the IRS Office of Appeals (Appeals Office) before an impartial officer.  Sec. 6330(b)(1), (3).  The parameters for the hearing are set forth in section 6330(c).  First, the Appeals officer must obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met.  Sec. 6330(c)(1).  Second, the taxpayer may raise at the hearing any

issue relevant to the collection action, including spousal defenses, challenges to the appropriateness of the collection action, and offers of collection alternatives. Sec. 6330(c)(2)(A). Additionally, the taxpayer may contest the existence and amount of the underlying tax liability, but only if he or she did not receive a notice of deficiency or otherwise have an opportunity to dispute the tax liability. Sec. 6330(c)(2)(B). The Appeals officer must make a determination after reviewing the matters prescribed in section 6330(c)(1) and (2) and considering whether the proposed collection action balances the need for efficient collection of taxes with the legitimate concern of the taxpayer that the collection should be no more intrusive than necessary. Sec. 6330(c)(3).

After the Appeals Office makes a determination under section 6330(c), the taxpayer may petition the Tax Court for judicial review. Sec. 6330(d). If the taxpayer's underlying tax liability is properly at issue, the Court reviews any determination regarding the underlying tax liability de novo. Sego v. Commissioner, 114 T.C. 604, 610 (2000). The Court reviews any other administrative determinations regarding the proposed collection action for abuse of discretion. Id.

III. Protections Afforded Taxpayers Under the Bankruptcy Code

A debtor who files a bankruptcy petition under chapter 7 of the Bankruptcy Code shall be granted a discharge unless one of

the grounds for denial of discharge enumerated in that chapter exists. 11 U.S.C. sec. 727(a). Title 11 U.S.C. section 727(b) provides in relevant part that, except as provided in 11 U.S.C. section 523, a discharge under subsection (a) of 11 U.S.C. section 727 discharges a debtor from personal liability for all debts incurred before the bankruptcy petition was filed. See United States v. Hatton, 220 F.3d 1057, 1059-1060 (9th Cir. 2000).

Title 11 U.S.C. section 523(a) sets forth several exceptions to discharge under 11 U.S.C. section 727 and provides in pertinent part:

§ 523. Exceptions to discharge

(a) A discharge under section 727 * * * of this title does not discharge an individual debtor from any debt--

(1) for a tax or a customs duty--

(A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed;

(B) with respect to which a return, if required--

(i) was not filed; or

(ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or

(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax * * *

Title 11 U.S.C. section 507(a)(8) refers to certain income taxes due for specified periods before the bankruptcy petition was filed. See Washington v. Commissioner, 120 T.C. 114, 121-122 (2003). Thus, 11 U.S.C. section 523(a)(1)(C) provides that a discharge under 11 U.S.C. section 727 does not discharge an individual debtor with regard to certain Federal income taxes if the debtor willfully attempted in any manner to evade or defeat such taxes.

A discharge under 11 U.S.C. section 727 relieves the debtor of personal (or in personam) liability. See, e.g., Schott v. WyHy Fed. Credit Union, 282 Bankr. 1, 5 (B.A.P. 10th Cir. 2002). Such a discharge, however, does not protect the debtor's assets if those assets were subject to a Federal tax lien that was properly filed pursuant to section 6323 before the bankruptcy petition was filed. See 11 U.S.C. sec. 522(c)(2)(B). As the Supreme Court explained in Johnson v. Home State Bank, 501 U.S. 78, 84 (1991), a discharge of personal liability in bankruptcy "extinguishes only one mode of enforcing a claim--namely, an action against the debtor in personam--while leaving intact another--namely, an action against the debtor in rem." See Connor v. United States, 27 F.3d 365, 366 (9th Cir. 1994); Iannone v. Commissioner, 122 T.C. 287, 292-293 (2004); Woods v. Commissioner, T.C. Memo. 2006-38.

IV.  Analysis

  A.  Jurisdiction

In the light of the relatively novel set of circumstances that preceded the filing of the petition, we feel compelled to briefly outline the scope of the Court's jurisdiction in this case.  We first note that this case comes before the Court after respondent collected substantial amounts from petitioners for the years 1983, 1984, 1986, and 1987 by issuing jeopardy levies.[9] There is no dispute that the Court's jurisdiction to review collection actions under section 6330(d) vests the Court with authority to review the Commissioner's determination to issue a jeopardy levy.  See Dorn v. Commissioner, 119 T.C. 356, 359 (2002); see also sec. 301.6330-1(a)(2)(ii), Proced. & Admin. Regs.

We also observe that although petitioners do not dispute the specific amounts of their underlying tax liabilities for any of the years in issue,[10] they do assert that some or all of their

_____

[9]Although the parties stipulated that respondent issued jeopardy levies with regard to petitioners' unpaid taxes for 1983, 1984, 1986, 1987, and 1996, and respondent applied amounts that he collected to each of those years, petitioners did not challenge the notice of determination for 1996 that respondent issued to them on Mar. 3, 2004, nor did they attempt to place the taxable year 1996 at issue.  Thus, our review is limited to respondent's determination to proceed with collection for 1983, 1984, 1986, and 1987.

[10]Petitioner likewise did not challenge the statement in the notice of determination that her claim for relief under sec. 6015 was "unprocessable" and not part of the administrative hearing.
(continued...)

tax liabilities for the years in issue were discharged in bankruptcy. The Court's jurisdiction to review a collection action under section 6320 and/or 6330 includes the authority to determine whether a taxpayer's unpaid tax liabilities were discharged in a bankruptcy proceeding. See Swanson v. Commissioner, 121 T.C. 111, 118-119 (2003); Washington v. Commissioner, supra at 120-121. A taxpayer's assertion that his or her tax liabilities were discharged in bankruptcy amounts to a challenge to the appropriateness of the collection action under section 6330(c)(2)(A). Swanson v. Commissioner, supra at 119. Accordingly, we have jurisdiction to review respondent's determination that petitioners' tax liabilities were excepted from discharge in the bankruptcy proceeding. See Kendricks v. Commissioner, 124 T.C. 69, 75 (2005); Swanson v. Commissioner, supra at 119.

Finally, the notice of determination includes a statement that any question regarding the appropriateness of the disputed jeopardy levies is moot inasmuch as petitioners' tax liabilities for the years in issue were fully paid by application of the amounts collected through the jeopardy levies and petitioner's payment in May 2003.[11] We conclude that this matter is not moot.

---

[10](...continued)
Under the circumstances, petitioner is deemed to have conceded this issue. See Rule 331(b)(4).

[11]Respondent did not assert that this matter is moot in his
(continued...)

When the Commissioner determines that collection of tax is in jeopardy, the taxpayer is not afforded a prior opportunity for a hearing under section 6330 to challenge the appropriateness of the levy before it is issued. See sec. 6330(f)(1). In recognition of this reality, section 6330(f) provides that the taxpayer against whom a jeopardy levy is issued "shall be given the opportunity for the hearing described in [section 6330] within a reasonable time after the levy." The right to a hearing conferred by section 6330(f) is not limited to situations where some portion of the taxpayer's tax liability remains unpaid. In sum, subsections (d) and (f) of section 6330 confer upon a taxpayer against whom a jeopardy levy has been issued an unqualified right to a postlevy hearing (if timely requested) and judicial review by this Court, regardless of whether the jeopardy levy resulted in the seizure of assets sufficient to fully pay the disputed tax liabilities. See Dorn v. Commissioner, supra.

Consistent with the foregoing, the issues we are called upon to decide are (1) whether the requirements of all applicable laws and administrative procedures were met in respect of the disputed jeopardy levies, and (2) the related questions whether petitioners' tax liabilities were discharged in bankruptcy and

---

[11](...continued)
pleadings or at trial. Respondent made a passing reference to mootness in a footnote in his opening brief, but he did not offer any meaningful discussion with regard to the issue.

whether respondent improperly levied on certain of petitioners'
assets.[12]

B.  Dischargeability of Unpaid Taxes

The notice of determination states the Appeals officer
concluded petitioners' tax liabilities for the years in issue
were excepted from discharge in bankruptcy under 11 U.S.C.
section 523(a)(1)(C) and therefore respondent was free to proceed
with collection.  Petitioners contend that the Appeals officer
erred in this determination.

Title 11 U.S.C. section 523(a)(1)(C) excepts from discharge
a debtor's liability for taxes if the debtor "willfully attempted
in any manner to evade or defeat such tax".  Although bankruptcy
courts normally make determinations regarding the
dischargeability of specific debts, nonbankruptcy courts may
exercise jurisdiction to determine the applicability of the
exceptions to discharge enumerated in 11 U.S.C. section 523(a)
(other than the exceptions contained in subsection (a)(2), (4),

---

[12]In connection with the argument that some or all of their
taxes for the years in issue were discharged in bankruptcy,
petitioners erroneously maintain that (1) they are entitled to a
determination that they overpaid their taxes, and (2) the Court
has the authority under sec. 6512(b) to order respondent to
process a refund.  To the contrary, we recently held in Greene-
Thapedi v. Commissioner, 126 T.C. 1, 8-13 (2006), that sec. 6330
does not provide this Court with jurisdiction to determine an
overpayment or to order a refund or credit of taxes paid.  On the
other hand, we also noted in Greene-Thapedi v. Commissioner,
supra at 9 n.13, that the Court has inherent equitable powers to
order the Commissioner to return to a taxpayer property that was
improperly levied upon.

and (6)).  See 4 Collier on Bankruptcy, par. 523.03, at 523-19 to 523-21 (March 2006).  As we explained in Swanson v. Commissioner, supra, the question whether a taxpayer's debts are excepted from discharge may have a direct bearing on whether the Commissioner's determination in a collection action should be sustained.

Neither the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure impose a time limit or deadline in respect of a determination of the applicability of an exception to discharge under 11 U.S.C. section 523(a)(1)(C).  See Fed. R. Bankr. P. 4007(b) (a complaint that a debt is excepted from discharge may be filed anytime during a bankruptcy case, and if the case is closed, the case may be reopened for the purpose of filing such a complaint); see also 4 Collier on Bankruptcy, par. 523.04, at 523-23 (September 2005) ("If the dischargeability issue is not raised during the bankruptcy case, it may be determined potentially in the state court or other nonbankruptcy court in an action initiated by the debtor or as an affirmative defense in an action initiated by the creditor.").[13]

---

[13]We reject petitioners' contention that respondent was obliged to bring an action in the bankruptcy court to revoke petitioners' discharge under 11 U.S.C. sec. 727(d) and (e) (revocation of discharge obtained through debtor's fraud).  An action under 11 U.S.C. sec. 727(e)(1) to revoke a discharge extends to all of the debtor's debts and constitutes an action that is distinct from the two-party dispute contemplated in an action to determine whether a particular tax debt is excepted from discharge under 11 U.S.C. sec. 523(a).  See Menk v. Lapaglia, 241 Bankr. 896, 906-907, 911 (B.A.P. 9th Cir. 1999) (recognizing the distinctions between the two actions); see also

(continued...)

The exception to discharge under 11 U.S.C. section 523(a)(1)(C) is applicable if the following elements are present: (1) The debtor engaged in an affirmative act or omission to evade or defeat the payment or collection of tax, and (2) the debtor acted willfully.  See United States v. Jacobs, 490 F.3d 913, 921 (11th Cir. 2007) (and cases cited therein); United States v. Fegeley, 118 F.3d 979, 983-984 (3d Cir. 1997).  A debtor acts willfully under 11 U.S.C. section 523(a)(1)(C) by voluntarily and intentionally violating a known legal duty.  Griffith v. United States, 206 F.3d 1389, 1396 (11th Cir. 2000).

Respondent avers that petitioner is collaterally estopped from denying that her tax liabilities for the years in issue were excepted from discharge under 11 U.S.C. section 523(a)(1)(C) because petitioner was convicted of willfully attempting to evade the payment of her tax liabilities for 1983, 1984, 1986, and 1987 under section 7201.[14]

---

[13](...continued)
6 Collier on Bankruptcy, par. 727.01[1], at 727-8 (June 2006) ("The concept of nondischargeability of a particular debt under section 523 is not to be confused with denial of discharge for all debts under section 727.").

[14]Petitioners contend that respondent did not properly plead collateral estoppel in his answer.  We disagree.  The notice of determination includes a statement that petitioner's tax liabilities were not dischargeable, as a result of petitioner's criminal conviction under sec. 7201, and petitioners specifically challenged this point in their petition.  Moreover, respondent addressed the matter in his answer by admitting that collateral estoppel would not be applicable if petitioner's convictions were overturned on appeal.  In short, both parties understood that

(continued...)

As explained by the Supreme Court in <u>Montana v. United States</u>, 440 U.S. 147, 153 (1979), the doctrine of issue preclusion, or collateral estoppel, provides that, once an issue of fact or law is "actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation."  See <u>Parklane Hosiery Co. v. Shore</u>, 439 U.S. 322, 329 (1979).  Collateral estoppel is a judicially created equitable principle the purposes of which are to protect parties from unnecessary and redundant litigation, to conserve judicial resources, and to foster certainty in and reliance on judicial action.  <u>Montana v. United States</u>, <u>supra</u> at 153-154; <u>United States v. ITT Rayonier, Inc.</u>, 627 F.2d 996, 1000 (9th Cir. 1980).

It is well settled that bankruptcy courts may apply the doctrine of collateral estoppel in making dischargeability determinations.  See <u>Grogan v. Garner</u>, 498 U.S. 279, 285 n.11 (1991); <u>Simone v. United States</u>, 252 Bankr. 302, 306-307 (Bankr. E.D. Pa. 2000).  Inasmuch as this Court has undertaken to determine in the disposition of this collection review proceeding whether petitioners' tax liabilities were excepted from discharge, and with a view to furthering the policies underlying

---

[14](...continued)
application of the doctrine of collateral estoppel was a disputed issue.

the doctrine of collateral estoppel, we conclude that the doctrine may be asserted and considered by the Court in this collection review proceeding under section 6330.

In Peck v. Commissioner, 90 T.C. 162, 166-167 (1988), affd. 904 F.2d 525 (9th Cir. 1990), the Court identified the following five conditions that must be satisfied before collateral estoppel may be applied in the context of a factual dispute:  (1) The issue in the second suit must be identical in all respects with the issue decided in the first suit, (2) the issue in the first suit must have been the subject of a final judgment entered by a court of competent jurisdiction, (3) the person against whom collateral estoppel is asserted must have been a party or in privity with a party in the first suit, (4) the parties must actually have litigated the issue in the first suit and resolution of the issue must have been essential to the prior decision, and (5) the controlling facts and applicable legal principles must remain unchanged from those in the first suit. See United States IRS v. Palmer, 207 F.3d 566, 568 (9th Cir. 2000) (citing Pena v. Gardner, 976 F.2d 469, 472 (9th Cir. 1992)).  We shall examine each of these conditions in turn.

Section 7201 provides in pertinent part that "Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall * * * be guilty of a felony".  We note that section 7201 encompasses two closely related but distinct crimes:  (1) An attempt to evade or

defeat any tax (evasion of assessment),[15] and (2) an attempt to evade or defeat the payment of any tax (evasion of payment). See Sansone v. United States, 380 U.S. 343, 354 (1965) (citing Lawn v. United States, 355 U.S. 339 (1958)). Petitioner was convicted of attempting to evade the payment of her taxes for the years in issue.

To prove that a taxpayer attempted to evade payment of tax, the Government must establish that the taxpayer failed to pay a tax imposed under the Internal Revenue Code,[16] the taxpayer engaged in an affirmative act to evade payment, and the taxpayer acted willfully. See United States v. Schoppert, 362 F.3d 451, 454-456 (8th Cir. 2004). Like the willfulness element under 11 U.S.C. section 523(a)(1)(C), willfulness for purposes of section 7201 requires proof that the taxpayer voluntarily and intentionally violated a known legal duty. Cheek v. United States, 498 U.S. 192, 201 (1991); United States v. Pomponio, 429 U.S. 10, 12 (1976). Because the elements necessary for a

---

[15]To prove that a taxpayer attempted to evade assessment of tax, the Government normally must establish three elements: willfulness, the existence of a tax deficiency, and an affirmative act constituting an evasion or attempted evasion of tax. See Sansone v. United States, 380 U.S. 343, 351 (1965); United States v. Wilkins, 385 F.2d 465, 472 (4th Cir. 1967).

[16]In an evasion of payment case, the Government normally is not required to show that a tax deficiency exists because the underlying tax liability has been assessed but remains unpaid. See United States v. Conley, 826 F.2d 551, 557 (7th Cir. 1987) (taxpayer filed timely and accurate returns reporting tax due but concealed his assets to evade payment); United States v. Hook, 781 F.2d 1166, 1168-1169 (6th Cir. 1986) (same).

conviction under section 7201 overlap with the elements necessary to establish the applicability of the exception to discharge under 11 U.S.C. section 523(a)(1)(C), we conclude the first condition for collateral estoppel is present.

Petitioner was charged in a single count of the superseding indictment with violating section 7201 by willfully attempting to evade and defeat the payment of income taxes she owed for 1983, 1984, 1986, and 1987. The superseding indictment alleged that petitioner fraudulently caused the bankruptcy court to discharge her tax debts for the years in issue. When an act of evasion of payment of taxes involves transfers of funds or concealing assets that cannot logically be assigned to a particular taxable year, section 7201 permits a unit of prosecution charging an evasion of payment of taxes owed for a group of tax years. See United States v. Pollen, 978 F.2d 78, 85-87 (3d Cir. 1992). In United States v. Shorter, 809 F.2d 54, 56-58 (D.C. Cir. 1987), the court explained that tax evasion covering several taxable years may be charged in a single count where the defendant has allegedly engaged in a course of conduct directed at evading payment of those taxes.

After a hard-fought and lengthy trial, petitioner was convicted of several crimes, including a violation of section 7201, as outlined above, and each such conviction was upheld on appeal. See United States v. Bussell, 414 F.3d at 1052. Consequently, we conclude that the second, third, and fourth

conditions for the application of collateral estoppel are present.  Specifically, petitioner was the defendant in the earlier criminal proceeding, the parties litigated the charge that petitioner violated section 7201, and petitioner's conviction under section 7201 was affirmed by a final judgment entered by the Court of Appeals for the Ninth Circuit.

Finally, there is no dispute that the controlling facts and legal principles remain unchanged from the time of the criminal proceeding to the present.  Consistent with the foregoing, we hold that petitioner is collaterally estopped from contesting respondent's determination that her tax liabilities for the years in issue were excepted from discharge under 11 U.S.C. section 523(a)(1)(C).[17]  See Grothues v. IRS, 226 F.3d 334, 339 (5th Cir. 2000) (taxpayer estopped from challenging 11 U.S.C. section

---

[17]Petitioners make the point that Mr. Bussell was not convicted of tax evasion or any other crime, and therefore, the doctrine of collateral estoppel does not apply to the Estate of John Bussell.  As discussed in detail in this Opinion, however, we conclude that petitioner is collaterally estopped from contesting respondent's determination that her tax liabilities for the years in issue were excepted from discharge under 11 U.S.C. sec. 523(a)(1)(C).  Further, we observe that petitioner resides in California, a community property State, and there has been no showing that respondent levied upon anything other than the Bussells' "community property" under California law.  See, e.g., Ordlock v. Commissioner, 126 T.C. 47, 58 (2006) (citing McIntyre v. United States, 222 F.3d 655 (9th Cir. 2000), for the proposition that under California law the Commissioner may collect one spouse's separate tax liability out of community assets).  Consequently, absent any indication that respondent levied on separate property of the Estate of John Bussell, the nonapplicability of collateral estoppel as to the Estate of John Bussell is simply irrelevant to the question concerning the appropriateness of the disputed collection action.

523(a)(1)(C) discharge exception because taxpayer pleaded guilty to evading the payment of excise taxes under section 7201); Simone v. United States, 252 Bankr. 302 (Bankr. E.D. Pa. 2000).

Petitioner seeks to avoid the application of collateral estoppel by arguing that it is possible the jury decided that she was guilty of violating section 7201 because she attempted to evade the payment of tax for one or more (but not all) of the years in issue. To the contrary, the Government charged petitioner with a single count of violating section 7201 by engaging in a course of conduct intended to evade the payment of taxes for each of the years in issue. As previously mentioned, section 7201 permits a unit of prosecution (a single count) charging evasion of payment of taxes owed for a group of tax years in a case (such as the present case) where it is not practicable to assign to a particular taxable year the value of assets a taxpayer attempted to hide from the Commissioner. See United States v. Pollen, supra at 85-87. Moreover, the record clearly shows that, before filing for bankruptcy, petitioners failed to pay substantial amounts of their tax liabilities for each of the years in issue. There is no indication that petitioners attempted to contest that fact in the criminal case, and it is evident that any attempt to do so would have been futile. Finally, what the Government alleged and proved to the satisfaction of the jury in petitioner's criminal case was that petitioners failed to disclose all of their assets in the

bankruptcy proceeding in a willful attempt to use the bankruptcy proceeding as a means to evade the payment of their tax liabilities for the years in issue.  Petitioner simply cannot relitigate these facts.

Petitioner also asserts that the exception to discharge under 11 U.S.C. section 523(a)(1)(C), which uses the past tense in referring to a debtor who "willfully attempted" to evade or defeat a tax, is applicable only if the debtor attempted to defeat or evade taxes before filing for bankruptcy; i.e., prepetition.  Petitioner reasons that, because the superseding indictment stated that petitioner violated section 7201 by acts committed both prepetition and postpetition,[18] the possibility exists that the jury based its guilty verdict solely on petitioner's postpetition activities.

Petitioner does not cite any case in which 11 U.S.C. section 523(a)(1)(C) has been interpreted in this fashion, and we are not aware of such a case.  In any event, petitioner's argument is strained and unconvincing--we see no justification for limiting the scope of the exception to discharge set forth in 11 U.S.C. section 523(a)(1)(C) to a taxpayer's prepetition activities when opportunities to deceive the Commissioner and the bankruptcy court are available throughout a bankruptcy proceeding.  In sum,

_____

[18]The superseding indictment referred to petitioner's course of conduct between June 1992 through at least Aug. 22, 1995--the latter being the date the bankruptcy court issued its discharge order.

we reject petitioner's argument and conclude that the plain language of 11 U.S.C. section 523(a)(1)(C) is properly read as excepting from discharge any tax that petitioner attempted to defeat or evade either before or during the bankruptcy proceeding.

C.    Dischargeability of Interest

Petitioners contend that the bankruptcy court's discharge order relieved them of liability for interest accrued on their unpaid tax liabilities.  However, interest accrued on a tax liability excepted from discharge is also nondischargeable.  See Bruning v. United States, 376 U.S. 358, 360 (1964); Ward v. Board of Equalization (In re Artisan Woodworkers), 204 F.3d 888, 891 (9th Cir. 2000).  Because petitioners' 1983, 1984, 1986, and 1987 tax liabilities are excepted from discharge, they remain liable for the interest that accrued on those liabilities.

D.    Dischargeability of Penalties

The parties agree that the penalties respondent assessed against petitioners for the years in issue were discharged under 11 U.S.C. section 523(a)(7)(B), which provides for the discharge of any tax penalty "imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition".[19]  Respondent apparently does not

_____

[19]The Bussells filed their bankruptcy petition on Mar. 7, 1995, and their unpaid income tax liabilities for 1983, 1984, 1986, and 1987 arose more than 3 years before that date.

dispute that there is no exception to discharge for these penalties because 11 U.S.C. section 523(a)(1)(A), which refers to 11 U.S.C. section 507(a), excepts from discharge only priority tax penalties, a term defined in 11 U.S.C. section 507(a)(8)(G) as penalties "in compensation for actual pecuniary loss." Respondent acknowledges that the penalties assessed against petitioners were not "pecuniary loss" penalties.  Respondent argues, however, that he was free to collect the penalties in question because the notice of Federal tax lien filed with the Los Angeles County Recorder's Office in March 1994 attached to certain of the Bussells' assets before they filed their bankruptcy petition.

A Federal tax lien that is properly filed before a debtor files for bankruptcy attaches to the debtor's property and is not extinguished by a subsequent bankruptcy discharge.  See 11 U.S.C. sec. 522(c)(2)(B); Johnson v. Home State Bank, 501 U.S. at 84; Connor v. United States, 27 F.3d at 366; Iannone v. Commissioner, 122 T.C. at 292-293.  On the other hand, a prepetition lien does not attach to property acquired by the debtor after a bankruptcy petition is filed.  See, e.g., United States v. McGugin (In re Braund), 423 F.2d 718, 718-719 (9th Cir. 1970).

Respondent contends that the notice of Federal tax lien filed with the Los Angeles County Recorder's Office attached to the pension plan account that petitioners maintained at Washington Mutual Bank and to the Connecticut Mutual and John

Hancock term life insurance policies and therefore respondent was justified in levying upon and applying the proceeds from those assets to satisfy the penalties in question.[20]

Petitioners do not challenge the validity of respondent's lien, nor do they dispute that the Bussells owned the pension plan account and the life insurance policies when they filed their bankruptcy petition. Petitioners argue instead that respondent failed to prove that those assets had sufficient value as of the date of the bankruptcy filing to offset all of the penalties in question. As petitioners see it, respondent must have improperly collected petitioners' postpetition assets and applied the proceeds against petitioners' penalties. Petitioners contend that they are entitled to a refund of any amounts that respondent collected in violation of the bankruptcy discharge as it pertains to tax penalties.

This is not a case in which the levies in question were preceded by an invalid assessment, see Chocallo v. Commissioner, T.C. Memo. 2004-152, nor (as discussed below) did respondent fail to adhere to any of the statutory provisions governing jeopardy levies, see Zapara v. Commissioner, 124 T.C. 223 (2005), as

[20]We reject petitioners' assertion that respondent "waived" the right to make this argument. To the contrary, although the issue was discussed in the notice of determination, petitioners did not address it in their petition. Nevertheless, because the parties stipulated matters related to this issue and developed the issue through testimony at trial, we conclude the issue was tried by consent of the parties and is properly before the Court. See Rule 41(b).

supplemented 126 T.C. 215 (2006). Respondent was entitled, pursuant to the notice of Federal tax lien filed in March 1994, to levy upon prepetition assets to satisfy petitioners' tax liabilities, including the discharged penalties. Because respondent had the right to proceed in rem against petitioners' prepetition assets, respondent's decision to pursue a jeopardy levy was appropriate and was not an abuse of discretion.

Because respondent had the right to proceed in rem against prepetition assets to satisfy the discharged penalties, petitioners' contention that they are entitled to a refund to the extent respondent may have improperly applied proceeds of postpetition assets in partial satisfaction of the discharged penalties is not relevant to the issue before us--whether respondent's use of a jeopardy levy was appropriate. Petitioners' contention may be relevant in an action seeking refund of an overpayment. See sec. 6342(b). However, any ruling by this Court on that subject would amount to an advisory opinion. See, e.g., <u>Greene-Thapedi v. Commissioner</u>, 126 T.C. 1, 13 (2006).

For the reasons already described, we do not have to decide the value of the pension plan account[21] or the value of the life

---

[21] The record shows that the Bussells' pension plan account had substantial value on the date the bankruptcy petition was filed. Revenue Officer Stevens testified that the prepetition value of the pension plan was $284,040 and that he determined the value from account statements and other documents sent to him by
(continued...)

insurance policies[22] on the date the Bussells filed their bankruptcy petition in order to decide whether the jeopardy levy was appropriate. We conclude only that respondent was entitled to levy on all of these assets and apply the proceeds against petitioners' unpaid tax liabilities, interest thereon, and the penalties in question.

E. Satisfaction of Notice Requirements for Collection

Petitioners contend that the Appeals officer erroneously concluded that petitioners received proper notice before the jeopardy levies were served on Washington Mutual Bank. Specifically, petitioners contend that respondent failed to provide them with notice and demand for immediate payment and, as a result, they were denied the opportunity to fail or refuse to pay their tax liabilities before respondent served the jeopardy levies. As explained below, petitioners simply misconstrue the applicable statutory provisions.

---

[21](...continued)
the plan administrator and by petitioners' representative at that time.

[22]A term life insurance policy may have value to the extent (1) the insured has the right to renew the policy at the end of the term regardless of his or her medical condition, and (2) the beneficiary of the policy has the right to receive death benefits if the insured dies during the period the policy is in effect. See Minnesota Mut. Life Ins. Co. v. Ensley, 174 F.3d 977, 984 n.3 (9th Cir. 1999); Elfmont v. Elfmont, 891 P.2d 136, 141-142 (Cal. 1995) (citing Pritchard v. Logan (Estate of Logan), 236 Cal. Rptr. 368, 371 (Ct. App. 1987)).

The first sentence of section 6331(a) provides that, if any person liable to pay any tax neglects or refuses to pay the tax within 10 days after notice and demand, the Secretary is authorized to collect such tax by levy upon all property and rights to property belonging to such person or on which there is a lien for the payment of such tax. The final sentence of section 6331(a) provides that if the collection of tax is in jeopardy and the Commissioner finds it necessary to expedite collection, the normal 10 days' advance notice requirement may be set aside and the Commissioner may instead serve the taxpayer with a notice and demand for immediate payment. Petitioners assert that respondent was obliged under the last sentence of section 6331(a) to provide them with notice and demand for immediate payment before proceeding with the jeopardy levies in dispute. We disagree.

The record shows that respondent complied with the first sentence of section 6331(a) by sending the Bussells multiple notices of balance due with regard to their unpaid taxes for the years in issue during 1992 and 1993. In addition, respondent sent them notices of intent to levy for each of the years in issue during 1993, and respondent filed Federal tax liens for the years in issue during 1994. All of these collection notices were issued well in advance of the jeopardy levies which were served in 2002. It is well settled that a notice of balance due constitutes a notice and demand for payment within the meaning of

section 6303(a).  See <u>Hughes v. United States</u>, 953 F.2d 531, 536 (9th Cir. 1992); see also <u>Hansen v. United States</u>, 7 F.3d 137, 138 (9th Cir. 1993); <u>Craig v. Commissioner</u>, 119 T.C. 252, 262-263 (2002).

Considering that respondent fully complied with the first sentence of section 6331(a) and petitioners repeatedly failed to pay their taxes for the years in issue, respondent was under no obligation to provide petitioners with any additional notice and demand for payment before serving the jeopardy levies in question.  Requiring a notice and demand for immediate payment in all jeopardy situations, as petitioners suggest, is inconsistent with both section 6331(d)(3), which provides that the Commissioner is not required to give a taxpayer any notice of his intent to levy if collection is in jeopardy, and section 7429(a)(1)(B), which provides that the Commissioner has 5 days from the date of a jeopardy levy to give the taxpayer written notice of the information upon which he relied in determining that collection was in jeopardy.  Simply put, by the time respondent determined that collection of petitioners' tax liabilities was in jeopardy, he had already complied with the 30 days' advance notice requirement, and therefore he was free to serve the jeopardy levies in dispute.[23]

_____

[23] We also note that the last sentence of sec. 6331(a) is permissive in that it states that the Secretary <u>may</u> issue a notice and demand for immediate payment.  Compare sec. 6861(a),
(continued...)

Petitioners received each collection notice that they were entitled to under the law.  In addition to providing petitioners with notice and demand for payment, respondent complied with sections 6330(f) and 7429(a)(1)(B) by providing petitioners with notice of the jeopardy levies and of their rights to administrative and judicial review of the levies 3 days after the levies were served.  Petitioners took full advantage of both avenues of review.

V.  Conclusion

We conclude that respondent did not abuse his discretion in determining that it was appropriate to proceed with collection by jeopardy levy.  The Appeals officer determined that all procedural requirements were met, addressed petitioners' arguments raised at the Appeals Office hearing, and balanced the need for efficient collection of taxes against petitioners' concern that the collection method was overly intrusive. Petitioners' unpaid tax liabilities and the interest accrued thereon were not discharged in bankruptcy, and respondent held a lien on petitioners' property that survived bankruptcy and provided an avenue for respondent to collect some, if not all, of the penalties petitioners owed.

----

[23](...continued)
which provides that in a case of jeopardy the Secretary <u>shall</u> immediately assess such deficiency and notice and demand <u>shall</u> be made for the payment.

We have considered the remaining arguments of both parties for results contrary to those discussed herein, and to the extent not discussed above, conclude those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.