T.C. Memo. 2010-120


UNITED STATES TAX COURT


STUART BECKER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 12919-08L.                    Filed June 2, 2010.


<u>Stuart A. Smith</u> and <u>Alan M. Blecher</u>, for petitioner.[1]

<u>Frederick Mutter</u>, for respondent.


MEMORANDUM OPINION


LARO, <u>Judge</u>:  This case is before the Court for decision
without trial.  See Rule 122.[2]  Petitioner petitioned the Court

---

[1]Alan M. Blecher (Mr. Blecher) entered an appearance for
petitioner on Jan. 5, 2009, and withdrew from the case when
Stuart A. Smith entered his appearance on June 17, 2009.

[2]Rule references are to the Tax Court Rules of Practice and
                                              (continued...)

to review the determination of the Internal Revenue Service Office of Appeals (Appeals) sustaining respondent's proposed levy on petitioner's property.  Respondent proposed the levy to collect approximately $337,000 of Federal income taxes (including taxes, penalties, and interest) (subject liability) that respondent's records showed petitioner owed for 1999 through 2004 (subject years).  Petitioner argues that the proposed levy is improper because the subject liability was discharged in his bankruptcy case (bankruptcy case).  Respondent argues that the subject liability was not part of the bankruptcy case and was not discharged.  We hold that petitioner is liable for the subject liability to the extent it was not part of the bankruptcy case. We shall remand this case to Appeals to determine the portion of the subject taxes that was not part of the bankruptcy case.

## Background

The facts in this background section are obtained primarily from the parties' stipulation of facts and the exhibits submitted therewith.  Petitioner resided in New York when his petition was filed.  He filed a Form 1040, U.S. Individual Income Tax Return, for each of the subject years using the filing status of married filing separately.

---

[2](...continued)
Procedure.  Unless otherwise indicated, section references are to the applicable versions of the Internal Revenue Code.  Some dollar amounts are rounded.

Petitioner has worked for over 30 years as a certified public accountant specializing in tax matters. On July 13, 1992, he (as an individual debtor) filed a voluntary petition for protection under chapter 11 of the Bankruptcy Code. The petition was filed with the U.S. Bankruptcy Court for the Southern District of New York. Petitioner's bankruptcy estate (estate) included his accounting practice (practice), and petitioner administered the practice during the 14-year bankruptcy case as the debtor in possession.[3] Petitioner had employees who worked with him in the practice.

For the subject years, petitioner timely filed Forms 1040 on which he reported his Federal income tax liabilities as $26,951, $77,921, $27,243, $58,626, $23,312, and $31,415, respectively. He did not tender a payment with any of these returns. Respondent assessed each amount of reported tax and assessed other amounts for additions to tax and for statutory interest. Petitioner has since paid $11,570 towards the total amount assessed for 1999. Petitioner has not paid any of the amounts assessed for 2000 through 2004.

Each of petitioner's Federal income tax returns for 2002 through 2004 reported that petitioner was a certified public accountant who during the year did not receive any wages or

_____

[3]Petitioner apparently operated the practice during the subject years through two entities; namely, Becker & Co., L.L.C., and Becker Tax Management Corp.

salary in his capacity as an employee.[4]  The returns included

Schedules E, Supplemental Income and Loss, with accompanying

papers that reported that petitioner realized the following

amounts of income from Becker & Co., L.L.C.:

|                     | 2002    | 2003    | 2004    |
|---------------------|---------|---------|---------|
| Ordinary income     | $8,092  | $46,978 | $96,479 |
| Guaranteed payments | 160,000 | 100,000 | -0-     |
| U.S. trustee fee    | (2,500) | -0-     | (3,000) |
|                     | 165,592 | 146,978 | 93,479  |

The returns also respectively reported that petitioner had

realized "Miscellaneous" income of $100,000, $60,000, and $90,000

from Becker Tax Management Corp.

On November 14, 2005, petitioner filed with the bankruptcy

Court an amended plan of reorganization dated November 9, 2005

(plan).  The plan identified the "debtor" as "STUART BECKER as

debtor-in-possession" and stated that

> Each Administration [sic] Expense shall be paid in
> full, without interest, in cash on the Consummation
> Date or upon such other terms as may be agreed upon
> between an Administration [sic] Claimant and Debtor;
> provided, however, that Administration [sic] Expenses
> representing liabilities incurred in the ordinary
> course of business by the Debtor, as Debtor-in-
> Possession, shall be assumed and paid by the
> Reorganized Debtor in the ordinary course of business
> or in accordance with the terms and conditions of any
> agreements relating thereto.  Administration [sic]
> expenses to be paid in full on the Consummation Date

---

[4]The record does not include petitioner's Federal income tax
return for any other year.  Nor does the record include any
Federal income tax return (i.e., a Form 1041, U.S. Income Tax
Return for Estates and Trusts) for the estate or establish that
the estate ever filed any such return.

include post petition taxes to the IRS of $956,623.12
plus interest from November 15, 2005.[5]

Approximately 1 month before that filing, respondent had notified

the bankruptcy court that petitioner (as the debtor in

possession) owed the Internal Revenue Service administrative

expenses of $955,623.12 for taxes, interest, and penalties

attributable to: (1) The estate's income taxes for 1992, 1993,

1994, 1996, 1997, and 1998 and (2) the failure to pay employee

withholding taxes for numerous periods between December 31, 1994,

and September 30, 2004.[6] The $955,623.12 did not include any of

the subject liability.

On February 14, 2006, the bankruptcy court entered an order

confirming the plan which in turn discharged petitioner from any

debt on any claim that arose before the confirmation date, except

---

[5]The plan defined the term "Consummation Date" to mean the date which is 10 business days after the date upon which the Bankruptcy Court's order confirming the plan pursuant to 11 U.S.C. sec. 1129 (2000) was final. The plan defined the term "Administrative Expense" to mean "any cost or expense of administration of the Chapter 11 case allowed under § 503(b) of the Bankruptcy Code". See 11 U.S.C. sec. 503(b) (2000) (stating that allowable administrative expenses include "any tax * * * incurred by the estate * * *, except a tax of a kind specified in section 507(a)(8) of this title" (generally, taxes on income or gross receipts for a taxable year ending on or before the date that the bankruptcy petition was filed)). The plan did not define the word "Administration", and we believe the plan erroneously used that word in lieu of the word "Administrative".

[6]The parties do not explain the $1,000 difference between this $955,623.12 and the $956,623.12 listed in the plan. We consider the difference to be inconsequential to our decision.

as otherwise stated in the plan.[7]  The order directed petitioner's counsel to make disbursements pursuant to the plan and effectively enjoined all persons holding claims or interests discharged under the order from taking any action against or affecting petitioner in his capacity as a "Reorganized Debtor".

On May 22, 2006, the Bankruptcy Court issued a "Final Decree" closing the bankruptcy case because all distributions under the plan had been made.  The final decree stated:

> Distributions under the above-named Debtor's Amended Plan of Reorganization dated November 9, 2005 (the "Plan") have been made;

> The Plan has been substantially consummated within the meaning of § 1101(2) of the Bankruptcy Code;

> The estate of the above named Debtor has been fully administered.

> IT IS ORDERED THAT:

> The Chapter 11 case of the above-named Debtor is closed.

Three weeks before the final decree was issued, respondent mailed to petitioner the Final Notice of Intent to Levy and Your Right to a Hearing (levy notice) for the subject years.  The levy notice stated that petitioner owed for those years $337,083 in Federal income taxes (inclusive of taxes, interest, and penalties).  The $337,083 stems from the assessed tax liabilities that petitioner reported on his Forms 1040 for the subject years.

---

[7]The plan defined a "claim" as a claim against petitioner in his capacity as the debtor in possession.

On May 24, 2006, petitioner timely filed Form 12153, Request for a Collection Due Process Hearing (request).  Petitioner asserted in the request that he disagreed with the proposed levy because

> The taxpayer filed for protection under Chapter 11 of the federal bankruptcy laws.  The taxes at issue herein became subject to the authority of the federal bankruptcy court, which adjudicated said claims as part of the taxpayer's Chapter 11 bankruptcy proceeding.  On May 22, 2006, the federal bankruptcy judge issued a "Final Decree" which closed out the federal bankruptcy case * * *

On February 22, 2008, respondent's settlement officer sent to petitioner (with a copy to his representative, Mr. Blecher) a letter scheduling petitioner for a telephone hearing at 3:30 p.m. on March 14, 2008.  The letter asked petitioner to call the settlement officer at the scheduled time and requested that petitioner complete and send to the settlement officer a collection information statement (CIS) within 2 weeks of the date of the letter so that the settlement officer could evaluate collection alternatives.  Petitioner did not participate in the scheduled hearing and did not submit a completed CIS to the settlement officer.

On April 17, 2008, the settlement officer informed Mr. Blecher that the subject liability was a postpetition liability that was not dischargeable in his bankruptcy case because petitioner and the estate were separate taxable entities under Internal Revenue Manual (IRM) part 5.9.8.11.1 (Jan. 1, 2006).

The settlement officer also informed Mr. Blecher that a postpetition liability incurred by an individual debtor such as petitioner may not be claimed in his bankruptcy case. Later that day, Mr. Blecher replied to the settlement officer that petitioner was discharged from his postpetition section 6672 liabilities, as well as liabilities for New York State income taxes which arose during the subject years. Mr. Blecher stated that petitioner continued to believe that the subject liability also was discharged in the bankruptcy case. On April 18, 2008, the settlement officer replied to Mr. Blecher that the settlement officer's position was stated in the IRM and suggested that Mr. Blecher take certain actions to obtain information as to which taxes were discharged in the bankruptcy case.

Petitioner did not provide to the settlement officer any financial information that the settlement officer requested from petitioner to evaluate collection alternatives. Nor did petitioner propose any collection alternative or challenge the appropriateness of the issuance of the levy notice. Petitioner asserted that his bankruptcy discharge prevented respondent from collecting the subject liability, and petitioner did not raise any other issue.

On April 24, 2008, Appeals issued petitioner the notice of determination (notice of determination) underlying this case. The notice of determination sustained the proposed levy.

## Discussion

### I. Jurisdiction

Section 6330(d)(1) entitles a taxpayer such as petitioner whose property is subject to a Federal income tax levy to appeal a determination made by Appeals sustaining the propriety of that levy. Section 6330(d)(1) provides that the appeal shall be "to the Tax Court (and the Tax Court shall have jurisdiction with respect to such matter)." This Court's jurisdiction rests upon the issuance of a valid notice of determination and the filing of a timely petition for review. See Smith v. Commissioner, 124 T.C. 36, 38-39 (2005); see also Rule 330(b).

Neither party concludes that we lack jurisdiction over this case. Nor do we. We have the requisite jurisdiction because the notice of determination is valid and the petition for review was timely filed.[8] See also Washington v. Commissioner, 120 T.C. 114, 120-121 (2003) (holding that the Court's jurisdiction allowed the Court to decide whether a bankruptcy court discharged the taxpayers from their unpaid Federal income tax liabilities).

---

[8]Nor does either party assert that respondent violated the automatic stay of 11 U.S.C. sec. 362 (2000) as to any action that he took with respect to the subject liability. We likewise find no such action that violated the automatic stay. Cf. Beverly v. Commissioner, T.C. Memo. 2005-41 (holding that a notice of intent to levy was invalid where it was issued in violation of the automatic stay and that the Commissioner was therefore not entitled to proceed with a proposed collection action sustained by Appeals).

II.  Standard of Review

Where the existence and the amount of the underlying tax liability are properly at issue, the Court will review the matter de novo.  See Urbano v. Commissioner, 122 T.C. 384, 393 (2004).  In other cases, the Court will review the determination of Appeals for an abuse of discretion.  See Prince v. Commissioner, 133 T.C. ___, ___ (2009) (slip op. at 7).

Petitioner does not contest the existence and the amount of the underlying tax liability.  Accordingly, we review the determination of Appeals using an abuse of discretion standard.  Under that standard, we will reject the determination of Appeals only if petitioner proves that the determination is arbitrary, capricious, or without sound basis in fact or in law.  See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), affd. 469 F.3d 27 (1st Cir. 2006); Phillips v. Commissioner, 114 T.C. 115, 133 (2000), affd. 272 F.3d 1172 (9th Cir. 2001).  Where, as here, the determination of Appeals turns on its interpretation of bankruptcy law, Appeals will have abused its discretion if that interpretation is unsound.  See Swanson v. Commissioner, 121 T.C. 111, 119 (2003).  Justice sometimes requires that we remand a case to Appeals to clarify its determination or to interpret and to apply relevant law that it may not have considered in making its determination.  Cf. Hoyle v. Commissioner, 131 T.C. 197 (2008) (case remanded to Appeals to clarify record upon which it

relied in making a determination); Lunsford v. Commissioner, 117 T.C. 183, 189 (2001) (indicating that the Court may remand a case to Appeals if "necessary or productive" to do so).

III. Review of Determination

A. Parties' Arguments

Petitioner argues that the subject liability was a claim against the estate and was (or should have been) included in the claims before the bankruptcy court. He asserts that the subject liability arose not from income earned by him personally, but from income earned by the practice. He concludes that the subject liability was discharged by the bankruptcy court because the plan did not provide for its payment.

Respondent agrees that the subject liability was not mentioned in the plan. Respondent argues that the subject liability was not (and could not have been) included in the plan because petitioner and the estate were separate taxpayers and the subject liability related to postpetition Federal income taxes petitioner owed in his capacity as an individual rather than as the debtor in possession. Respondent argues that the subject liability was not an administrative expense of the estate because the liability did not relate to a tax imposed on the estate's income. Respondent concludes that the subject liability was not before the bankruptcy court and that it was not discharged by that court.

B.  Court's Analysis

Petitioner's filing of his petition with the Bankruptcy
Court spawned the estate, a separate entity for bankruptcy
purposes and a separate taxpayer for Federal income tax purposes.
See sec. 1398; see also 11 U.S.C. sec. 541(a) (2000); In re
Estate of LaRosa, 364 Bankr. 612, 615-616 (Bankr. N.D. W.Va.
1991).  The estate's property consisted of "all legal or
equitable interests of the debtor [petitioner] in property as of
the commencement of the case" and all proceeds and profits later
emanating from that property.  11 U.S.C. sec. 541(a)(1), (6).
The estate's property did not include any postpetition earnings
from petitioner's services performed as an individual debtor.[9]
See 11 U.S.C. sec. 541(a)(6).  Petitioner administered the
estate's property (including the practice) throughout the
bankruptcy case as the debtor in possession.  See 11 U.S.C. secs.
1101, 1104, 1107 (2000).

The gross income of the estate was subject to Federal income
tax, as was the gross income of petitioner.  See sec. 1398.  The
estate's gross income included the portion of petitioner's gross
income to which the estate was entitled under the Bankruptcy
Code.  See sec. 1398(e)(1).  That portion of gross income was the

---

[9]By contrast, a bankruptcy estate resulting from a ch. 11
filing after Oct. 17, 2005, generally includes the debtor's
earnings from postpetition services, as well as his or her
subsequently acquired assets.  See 11 U.S.C. sec. 1115 (2006).

income emanating from the estate's property.  See 11 U.S.C. sec. 541(a)(6).  Petitioner's gross income included all items of his gross income that were not includable in the estate's gross income.  See sec. 1398(e)(2).  The postpetition earnings from petitioner's services performed as an individual debtor were one such item that was includable in his (and not in the estate's) gross income, even to the extent that the earnings were realized by the practice which also realized other income includable in the estate's gross income.  See sec. 1398(e)(1) and (2); cf. Fitzsimmons v. Walsh (In re Fitzsimmons), 725 F.2d 1208, 1211-1212 (9th Cir. 1984) (where an attorney was a sole proprietor employing other attorneys, his estate's property included the earnings from the postpetition services of the other attorneys but not from his postpetition services); Altchek v. Altchek, 124 Bankr. 944 (Bankr. S.D. N.Y. 1991) (discussing Fitzsimmons and the views of two bankruptcy courts as to the application of 11 U.S.C. sec. 541(a)(6) to a chapter 11 sole proprietor).

Appeals determined that the subject liability was a liability of petitioner (and not of the estate) because the liability was incurred by petitioner.  The notice of determination, however, does not explain Appeals' characterization of the subject liability as incurred by petitioner.  Nor does the notice of determination explain Appeals' rejection of petitioner's contrary characterization.

The income underlying the subject liability stemmed primarily from the practice, and the parties agree that the practice was property of the estate throughout the bankruptcy case.  It seems natural to conclude, as petitioner does, that the subject liability was not incurred by petitioner but was incurred by the estate.  See 11 U.S.C. sec. 541(a)(6).  To the extent that the subject liability was incurred by the estate, the liability was discharged by the bankruptcy court, as petitioner asserts, by virtue of the fact that the plan did not provide for its payment.  Such is so even if respondent did not intend for such a discharge.  See Creel v. Commissioner, 419 F.3d 1135 (11th Cir. 2005) (U.S. attorney compromised a civil Federal income tax liability that the Commissioner did not intend to be compromised), affg. an Order and Decision of this Court dated Jan. 14, 2004; see also IRM pt. 5.9.8.14.2 (Mar. 1, 2007) (stating that the Commissioner's failure to claim an administrative expense tax in a bankruptcy case may result in a court's deciding that the tax was discharged).

The record at hand does not allow us to find the extent (if any) to which the subject liability was attributable to petitioner so as to decide whether Appeals abused its discretion in characterizing that liability as incurred by petitioner.[10]

---

[10]We give little weight to the fact that petitioner reported the income underlying the subject liability on his personal

(continued...)

While the income underlying the subject liability stemmed primarily from the practice, we are mindful (as discussed above) that the income is taxable to petitioner (and thus the subject liability was incurred by petitioner) to the extent that it represented earnings from postpetition services that petitioner rendered through the practice in his individual capacity.  Given that Appeals has not adequately explained the reasons underlying its determination that the subject liability was incurred by petitioner rather than by the estate, we believe that justice requires that we remand this case to Appeals to supplement the notice of determination to explain as much.  We shall do so.

Petitioner asks the Court to decide this case in his favor because the subject liability was unmentioned in the plan.  We decline to do so.  The mere fact that the subject liability was unmentioned in the plan does not necessarily mean that the subject liability was discharged.  During the bankruptcy case, petitioner filed his personal Federal income tax returns, and

---

[10](...continued)
income tax returns.  First, we do not find that the estate ever filed a Federal income tax return reporting its income.  If such a return was never filed, then petitioner, apparently a seasoned tax professional, may not have known that the estate was required to report its income on its own return.  Second, petitioner disavows that the income underlying the subject liability is his income, asserting that the income was earned on estate property. The record shows that the subject income did stem primarily from the practice, an undisputed asset of the estate, but does not establish whether the income related to postpetition services that petitioner rendered in his individual capacity.

respondent claimed that petitioner owed approximately $950,000 of Federal taxes (including penalties and interest) as administrative expenses of the estate. Petitioner deduces that respondent was on notice of the subject liability, that respondent omitted that liability in his requests for payment of administrative expenses, and that the bankruptcy court's confirmation of the plan thus discharged petitioner from payment of the subject liability. We disagree.

The subject liability was not an administrative expense of the estate (and did not have to be included in the plan) to the extent that the liability was neither "incurred by the estate" within the meaning of 11 U.S.C. sec. 503(b) (2000), nor a claim for payment of the estate's tax liability. See In re Johnson, 190 Bankr. 724 (Bankr. D. Mass. 1995) (stating that the postpetition taxes of a debtor are not administrative expenses and are not discharged in a chapter 11 case). Nor does the fact that the plan provided for the payment of petitioner's liability for postpetition withholding taxes attributable to the employees of the practice (as well as to income taxes imposed on the estate's income) necessarily mean that the plan discharged any income tax that petitioner owed on income he received in his individual capacity for services he provided through the practice. Instead, if the subject liability is traceable to petitioner (rather than to property of the estate), then, as

respondent asserts, that liability was not discharged by the bankruptcy court because it was never before that court.

IV.  Conclusion

Petitioner remains liable for the subject liability to the extent that it was not part of his bankruptcy case.  We shall remand this case to Appeals to determine the portion of the subject taxes that was not part of the bankruptcy case.

An appropriate order

will be issued.